WATERLOO, CEDAR FALLS & NORTHERN RAILWAY Co., Appellee, v. SUSANNA HARRIS et al., Appellants.

DOWER:  Nature of Estate—Sale of Part Prior to Admeasurement

1 —Effect.  A surviving spouse, prior to the setting off of his or her distributive share in the lands of the deceased intestate spouse, may not, as against other cotenant heirs, validly sell, encumber or charge with an easement, *any definite aliquot part* of such undivided lands.

TENANCY IN COMMON:  Mutual Rights—Sale of Aliquot Part of

2 Undivided Property.  Principle recognized that a cotenant, prior to some form of partition, may not, as against his cotenants, sell any definite aliquot part of the premises.

FRAUD:  Acts Not Constituting Fraud—Exercising Legal Right.

3 Principle recognized that the exercise of a legal right cannot constitute a fraud.

ESTOPPEL:  Equitable Estoppel—Sale of Part of Unassigned Dow-

4 er—Knowledge of Heir.  An heir is not estopped to assert the invalidity, as to him, of a contract by which a surviving spouse

(his mother) assumed to grant a railway right of way over lands held in common. from the fact that he learned that his mother had made such a contract, did not object thereto, and permitted the company to construct its road.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

SATURDAY, JANUARY 20, 1917.

REHEARING DENIED TUESDAY, MAY 22, 1917.

THIS is an action in equity for the specific performance of a written contract made by defendant Susanna Harris, in which she agreed to convey a right of way over lands owned by her, or in which she had an interest, at the time the contract was executed. Defendants deny the validity of the contract; say that, at the time it was made, Susanna Harris did not own the land, and had no authority to make a contract for a right of way thereover; and further plead that J. W. B. Harris is now the owner of the land unencumbered by the right of way. On these issues, the case was tried to the court, resulting in a judgment for plaintiff, and defendants appeal.—*Reversed and remanded.*

·*F. L. Anderson* and *Voris & Haas,* for appellants.

*Edwards, Longley, Ransier & Smith,* and *Barnes, Chamberlain & Hanzlik,* for appellee.

DEEMER, J.—I.  On November 15, 1913,

**1. DOWER: nature of estate: sale of part prior to admeasurement: effect.** Susanna Harris entered into a written agreement with plaintiff, whereby she agreed to give plaintiff "a strip of land 100 feet in width, the same being 50 feet on each side of the center line which may be hereafter located and staked out over and across the lands now owned by me." The consideration for the agreement was plaintiff's promise to locate and grade a right of way for its interurban railway over and upon the land said to be owned by Susanna Har-

ris, and the location of the tracks thereon before December 1, 1915. Plaintiff performed its part of the agreement some time prior to May 1, 1914, but the defendant refused to comply with her part of the contract. The title to the land originally stood in the name of B. F. Harris, the husband of Susanna, but he died intestate some time prior to the making of the contract in suit. ⌡

He left surviving Susanna, his widow, and her codefendant, J. W. B. Harris, his only heirs. On May 1, 1914, defendant J. W. B. Harris commenced an action against the plaintiff for damages, alleging that he was the owner in fee simple of an undivided two thirds of the real estate upon which the right of way had been located, and on May 14, 1914, the widow made an assignment to J. W. B. Harris of her alleged cause of action, or claim against the plaintiff herein, for damages by reason of the location of the right of way over the lands of which her husband died seized, and thereafter, and on December 8, 1914, plaintiff Harris amended his petition in the damage suit, claiming damages to the entire land theretofore owned by his father. Thereafter, and on the 8th day of February, 1915, the two defendants in this action entered into a voluntary agreement for partition of the real estate left by deceased. By the terms of this agreement, J. W. B. Harris was to receive that part of the real estate upon which plaintiff's right of way was established, and the widow's dower was so admeasured as to exclude therefrom any part of the right of way. Quitclaim deeds were made by one to the other in furtherance of this agreement. J. W. B. Harris was at all times aware of the contract made by Susanna, the widow, with plaintiff, although the record does not show that he was personally present at its making. He was in joint possession with his mother of all the land left by deceased, at the time she agreed to give the right of way, knew of the performance

by plaintiff of its part of the agreement, and made no objections thereto.

Plaintiff demanded a conveyance from defendants, according to the terms of the agreement with Susanna Harris, but they declined to execute the same.   It then brought this action for specific performance, the same having been commenced on December 19, 1914.

Appellants contend that the contract made by the widow before the admeasurement of her dower was and is invalid and of no effect, and that plaintiffs are not, in equity, entitled to enforce the same.   Appellants' counsel have made a learned argument to establish the fact that the widow had no title to any part of the lands of her deceased husband until her dower or widow's share was admeasured and set apart to her; that, as she had no title, she could not mortgage, sell or encumber the same, and that any attempt on her part to do so is of no validity whatever.

The share of a widow in her deceased husband's real estate is of statutory origin and regulation, subject to certain limitations not necessary to be noted; and these statutes have been changed from time to time.   By the Code of 1851, the widow was entitled to one third in value of her husband's real estate, upon his death, as her property in fee simple, and the same Code provided that it should be so set off as to include the dwelling house and the land constituting the homestead.   The Revision of 1860 repealed this law, and the widow was given one third in value of the real estate, said estate in dower to be and remain the same as at common law, to wit, an estate for life.   The ninth general assembly changed this law, and enacted the following in lieu thereof:

"One third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, which has not been sold on execution or other judicial sale, to which the wife has made no relin-

quishment of her right, shall, under the direction of the court, be set apart by the executor, administrator or heir, as her property in fee simple, on the death of the husband, if she survive him.   *   *   *

"All the provisions hereinbefore made in relation to the widow of a deceased husband, shall be applicable to the husband of a deceased wife. Each is entitled to the same right of dower in the estate of the other, and the like interest shall in the same manner descend to their respective heirs. The estate *by curtesy* is hereby abolished." Ch. 151, Secs. 1, 3, Acts of the Ninth General Assembly.

These two provisions were substantially embodied in the Code of 1873, and re-enacted in the Code of 1897. They were in force at the time the contract in suit was executed. Due to a failure to observe these statutory changes, some of our decisions are in apparent conflict. It is claimed that, under the statute as it now exists, and as it existed when the contract in suit was made, the widow, upon the death of her husband intestate, became invested with a fee simple title to an undivided one third of all the real estate of which her husband died seized, subject to some limitations, which we shall notice.

We have expressly held that, before admeasurement of the widow's distributive share, and before she may have elected under other statutes to take a life estate in lieu of dower, she may encumber her interest in the real estate by mortgage. *Herr v. Herr,* 90 Iowa 538; *Britt v. Gordon,* 132 Iowa 431, 438. Again, in *Larkin v. McManus,* 81 Iowa 723, and *Huston v. Seeley,* 27 Iowa 183, it was expressly held that she might sell her one-third interest before assignment, and that the purchaser might enforce his contract. We have also held, however, that, until assigned, it is not subject to execution or attachment. *Rausch v. Moore,* 48 Iowa 611; *Brightman v. Morgan,* 111 Iowa 481; *Getchell v. McGuire,* 70 Iowa 71. Again, until assignment of dower, the

widow cannot recover for damages done the land, or for use and occupation thereof. *Tuttle v. Burlington & M. R. R. Co.*, 49 Iowa 134; *Huston v. Seeley*, supra; *Laverty v. Woodward*, 16 Iowa 1. But upon her death before admeasurement, her share passes to her heirs as other real estate owned by her. *Potter v. Worley;* 57 Iowa 66; *Blair v. Wilson*, 57 Iowa 177; *In re Estate of Proctor*, 103 Iowa 232. And it is such an interest that it may be recovered in a real action. *Rice v. Nelson*, 27 Iowa 148; *Huston v. Seeley*, supra. In more recent cases, it is held that the widow's title vests upon the death of her husband. *In re Estate of Proctor*, supra; *Bosworth v. Blaine*, 170 Iowa 296; *In re Estate of Smith*, 165 Iowa 614.

If the widow has such an interest in the estate of her husband that she may sell, convey or encumber it before it is admeasured, may she sell a part of it or create an easement in the lands which will be binding upon her and the other heirs, so that, upon admeasurement of her dower, or upon partition, voluntary or otherwise, the part so sold, or over which an easement has been created, will be recognized and enforced against the other owners of the land? At best, the widow in this case was a tenant in common with her son, owning an undivided one third of the land. The statute provides that the survivor's share may be set off by the mutual consent of all the parties in interest, or by referees, etc., at any time within ten years. See Sec. 3369, Code, 1897. But this remedy is not exclusive. We have held that dower or distributive share may be set aside in an action in equity or by partition.

2. TENANCY IN COMMON: mutual rights: sale of aliquot part of undivided property.

The points to be noticed here are that the parties in interest may, by mutual consent, set aside the survivor's share or a surviving spouse's right to distributive share, and if they may have partition by action in court, they may also, by conveyance among themselves, make a voluntary

one. So that, from the time of the death of the husband
in this case, the right to have the distributive share of the
widow set aside existed. Until that was done, the right or
title was to an undivided part of the land not definitely
ascertained until some of the remedies suggested were
adopted. We shall put the case in the strongest light for
the plaintiff, and say that the widow was a tenant in com-
mon, owning a vested interest in an undivided one third of ·
the property left by the deceased, and ascertain what right,
if any, she had to sell or create a lien upon a definite ali-
quot part of her interest less than the whole, or convey a
right or easement over a specific part of the whole tract,
which will be binding upon her and also upon her co-own-
ers. Upon this proposition, the authorities speak with no
uncertainty. Neither of the cotenants has authority, in
virtue of the relation of cotenancy, to transfer or by any
means dispose of the common property. *Strickland v.
Parker,* 54 Me. 263, 268. Of course, there may be an agency
in fact, but this must be shown. This may be done by di-
rect testimony, or by such a showing as that an agency will
be implied. But in this case, there is no claim that any
agency in fact existed, and there is no such showing as to
justify a finding of an implied one. But one cotenant may
sell, convey or encumber the whole of his undivided interest
as such, although such a conveyance of an aliquot part of
the entire estate, describing it by metes and bounds, is of
no effect in law. Freeman on Cotenancy and Partition
(2d Ed.), Sec. 199, and cases cited. *Stookey v. Carter,* 92
Ill. 129; *Marks v. Sewall,* 120 Mass. 174.

As it is well settled that a cotenant cannot make a
grant of a specific part of the common property which will
convey title as against his cotenants, it follows that he can-
not grant any right or easement upon any specified portion
so as to confer a right capable of successful assertion
against the other owners. Freeman on Cotenancy and Par-

tition (2d Ed.), Sec. 185; Washburn on Easements and Servitude, Chap. 1, Sec. 3, and cases cited; *Collins v. Prentice,* 15 Conn. 423, 426; *Stookey v. Carter,* supra.  The latter case is almost directly in point.  The reasons for these rules are well stated by Chief Justice Shaw in *Adam v. Briggs Iron Co.,* 7 Cush. (Mass.) 361, 369, as follows:

"The ground upon which the doctrine is established is that a tenant in common of an entire estate is entitled, on partition, to have his property assigned in one entire parcel, according to his aliquot part.  The respective cotenants may convey their shares to one or many grantees, as they please, so it be of the entire estate; because, whether there be one or many cotenants, each may still have partition, which is inseparably incident to an estate in common, and have it in one parcel, and of like kind and quality with the estate which he holds in common.  I have a moiety; my cotenant has a moiety.  He may convey a quarter of the whole estate to one, an eighth to another, a sixteenth to another, and so on indefinitely, letting in other cotenants with me.  But all being seized of aliquot parts in the same estate and of like kind and quality, my right to partition is not disturbed by the number of cotenants.  But if he could convey his aliquot part in specified parcels of the estate, he might diminish the value of my right, if not render it worthless."

Another case has said, and truly, that a deed of a specified part, less than the whole, operates to break the unity of possession.  See also, *Tainter v. Cole,* 120 Mass. 162, 164; *Stark v. Barrett,* 15 Cal. 361, 370; *Gates v. Salmon,* 35 Cal. 576, 588; *Sutter v. San Francisco,* 36 Cal. 112, 115.  We have adopted these same rules in *Farr v. Reilly,* 58 Iowa 399; *Forrest Milling Co. v. Cedar Falls Mill Co.,* 103 Iowa 619; *Rush v. Burlington, C. R. & N. R. Co.,* 57 Iowa 201; *Hook v. Garfield Coal Co.,* 112 Iowa 210.

Of course, such a conveyance is not absolutely void,

for it may be good as between the parties to the extent of
vesting title thereafter acquired by the grantee in an ali-
quot part covered by the transfer. *Cunningham v. Pattee,*
99 Mass. 248. And sometimes a court, wherever the in-
terest of the parties will not be impaired, will set off the
lands so as to protect a grantee from one of the cotenants.
*Campau v. Godfrey,* 18 Mich. 27, 38; *McKee v. Barley,* 11
Gratt. (Va.) 340, 346.

Some courts have said that such a conveyance is good
as against everyone but the cotenants, and can only be
avoided by them. *Dall v. Brown,* 5 Cush. (Mass.) 289, 291.
J. W. B. Harris, the cotenant in this case, is seeking to
avoid the contract made by his mother, and the question
arises as to whether it is his right to have the same disre-
garded. As pointed out, sometimes a court will make par-
tition, so as to protect a grantee from one of the cotenants
to a specific part of the land. But the difficulty here is,
the statutes say that, in setting off the distributive share
of the widow, the land must be so divided as to include the
ordinary dwelling house given by law to the homestead, or
so much thereof as will equal the share allotted by law to
the widow, unless she prefers a different arrangement. This
right is, of course, paramount to the right of a grantee of a
specific part not homestead in character.

8. FRAUD: acts not constituting fraud: exercising legal right.

Again, one of the statutes quoted permits a
setting off of the distributive share by mu-
tual consent, and the right of voluntary par-
tition, of course, exists. This sort of a par-
tition was made, and it so happened that the widow's share
was fixed, as by law provided, so as to include the homestead,
or at least a part thereof, leaving to the cotenant, J. W. B.
Harris, the part upon which the right of way was located.
As the widow had the undoubted right, under the statute,
to insist on this arrangement, her insistence on that right
cannot amount to a fraud, and there are, in such circum-

stances, no equities in favor of the plaintiff. It must have known of the condition of the title to the land,· for it was of record, and it knew, or must be held to have known, of the widow's right under the law to take the part of her husband's lands which were given the widow as her share.

II. An estoppel might be found. had

4. ESTOPPEL: equitable estoppel: sale of part of unassigned dower: knowledge of heir.

the son been personally present when the mother made her contract with plaintiff, and failed to repudiate or disapprove the same. As a rule, one cannot stand by and see another sell his property as his own without being estopped from asserting that the party making the sale was not the owner. But there is no such showing in this record. The most that can be said from the record is that, after the contract was made, he knew of it and did not then object thereto, but permitted the plaintiff to go ahead and construct its road and build its tracks. There is no showing that plantiff was in any manner misled by his conduct, or that it acted any differently than it would have done had this defendant made objections to the improvement. As the conveyance did not attempt to bind him, he was not bound to object thereto. Plaintiff was as fully aware of its rights as he was, and must be held to have known of its rights under the contract with the widow.

The fact that defendant brought an action, at one time, for two thirds of the damages to the land, and at another, and after the assignment from his mother, for the whole of the damages, the case not having been tried or decided, but merely pending, does not conclude the defendant J. W. B. Harris. Neither is he bound by the fact that he obtained a deed to the part set aside to him from his mother. The making of the deed was necessary to the voluntary partition, and J. W. B. Harris did not receive his title from his mother in virtue of her deed to him; that title came from the father.

As already suggested, as defendants did nothing but what the law allowed and permitted them to do, it cannot be said that the partition was fraudulent. Indeed, no fraud is charged in the pleadings. Plaintiff is in no sense an innocent purchaser; and, as it has no contract with J. W. B. Harris for the land set apart to him, it cannot claim a right of way over that land. It had a contract with Mrs. Harris, but this contract did not cover the land set apart to her, and specific performance cannot be had against either defendant. What plaintiff's rights may be at law, or in defense to some claim of defendants', we do not decide. The trial court was in error in not dismissing plaintiff's petition, and the decree must be, and it is, reversed, and the case remanded for one in harmony with this opinion.—*Reversed and remanded.*

Gaynor, C. J., Weaver and Preston, JJ., concur.