PHILIP B. WATROUS et al., Appellees, v. EDWARD L. WATROUS et al., Appellants.

**WILLS:** Surviving Spouse—Attempt to Disinherit Husband—Right to Compel Election. A surviving husband who has been *wholly ignored* by the wife in the execution of her will, equally with a surviving husband who has been made a substantial devisee under his wife's will, may be put to a *statutory* election whether he will consent to the will, and thereby lose all interest in the wife's estate, or whether he will take his distributive one-third share. Sec 3376, Code Supp., 1913.

PRINCIPLE APPLIED: A husband and wife, with four children, lived separate and apart. The wife died, and left a will, which made no mention of her husband, and which left her entire estate of $200,000 to two sons and a daughter, except the sum of $3,000, bequeathed to a son, Edward. The will was filed for probate, and Edward filed a contest thereon. Edward was married, was an invalid, was without property, and there was a feeling among the father and some of the children that an annuity ought to be settled on Edward and his wife. If this was done, Edward was willing to dismiss his appeal. All parties were desirous of avoiding litigation over their family affairs. Talk was had, at times, between the father and some of the children, to the effect that the father owned one third of the wife's estate, and, by reason thereof, might well afford to make provision for the proposed annuity to Edward. The father and Edward, some four weeks after the wife's death, entered into a contract, reciting: (a) The pendency of Edward's contest; (b) that the father owned a one-third interest in the mother's estate; (c) that an amicable adjustment and an avoidance of litigation were desired; (d) that Edward should withdraw his contest and that the will should be probated; (e) that a life annuity was declared in favor of Edward, which should be payable out of and be a lien on the assets of the mother's estate

*belonging to the father.* In compliance with this contract, Edward immediately dismissed his contest. The will was probated two days later.

Notwithstanding said recitals, the father did not, in truth and fact, intend them to constitute an election, by himself and for himself, of a distributive share in his wife's estate, and he never at any time intended to claim for himself any interest whatever in his wife's estate. He seems to have viewed the contract solely as a means of doing something for Edward, without doing or taking or intending to take anything for himself. After the contract was executed, he seems to have treated it as his own personal obligation, though the contract contained no express statement that he would pay the annuity. Some five months later, two of the devisees under the mother's will served the statutory notice (Sec. 3376, Code Supp., 1913) upon the father, and called upon him to elect whether he would consent to the will; and, on the same day, the father duly executed a statutory election to abide by the will, and fully waived all interest in the estate.

*Held*: 1. The fact that the husband was ignored in the wife's will did not obviate his statutory duty to elect when said notice was given.

2. The execution of the annuity contract did not constitute an election to take a distributive share out of the wife's estate.

3. Upon the death of the wife, the husband did not *eo instanti* become vested with a distributive share, but was simply placed in the position where he had the right to elect whether he would abide by the will or repudiate it.

**WILLS:** Surviving Spouse—Will and Distributive Share—Election— Acts not Constituting. A surviving husband who has been wholly ignored by his deceased wife in the execution of her will does not elect to claim a distributive one-third share in the wife's property *by contracting for a lien on a one-third portion* of the wife's property, to secure a debt owed by him, when he, in truth and in fact, never intended to claim said distributive share for himself, and executed said contract under a misunderstanding as to its effect on the settlement of the wife's estate. Sec. 3376, Code Supp., 1913.

PRINCIPLE APPLIED: See No. 1.

**WILLS:** Surviving Spouse—Attempt to Disinherit—Nature of Vested Rights. A surviving husband who has been wholly ignored by the wife in the execution of her will does not, *eo instanti* upon the death of the wife, become vested, by operation of law,

with a distributive one-third share in the estate of the wife, subject to the divesting of the same by a subsequent election by the husband to submit to the terms of the will. His vested right, in such case, is simply to choose whether he will abide by the will or repudiate it and take his statutory distributive share. Sec. 3366, Code, 1897.

PRINCIPLE APPLIED: See No. 1.

**COMPROMISE AND SETTLEMENT:** Consideration—Settlement of Family Controversy. A contract entered into for the purpose of avoiding litigation, and thereby settling family difficulties growing out of an estate, is supported by a sufficient consideration. So held as to an implied agreement to pay an annuity.

PRINCIPLE APPLIED: See No. 1.

**ESTOPPEL:** Equitable Estoppel—Opportunity to Avoid Injury—Effect. An estoppel may not be based on alleged misleading conduct of another, when such conduct was fully known to complainant at a time such that he had ample opportunity to resume his former advantageous position, and avoid all injury by reason of such conduct.

**CONTRACTS:** Validity—Mental Weakness. Something more than mental weakness is necessary in order to overthrow a contract. It must appear that the one seeking to avoid the contract was incapable of reasonably understanding the meaning of the instrument. Evidence reviewed, and held insufficient to avoid a contract for mental incompetency, though the one contracting was aged and infirm.

**COMPROMISE AND SETTLEMENT:** Consideration—Dismissal of Groundless Suit—Evidence. The dismissal of a groundless suit not brought in good faith is not a sufficient consideration for a contract of compromise and settlement. It follows that admissions by the party instituting a suit, tending to show its groundless nature and his knowledge thereof, are admissible.

**APPEAL AND ERROR:** Abstracts—Appeal by Both Plaintiff and Defendant—Sufficiency of Abstract. Appeals by two hostile litigants in the same action do not require separate and duplicate abstracts. An abstract by one appellant may, by amendment, be so completed as to cover both appeals.

**APPEAL AND ERROR:** Right of Review—Waiver—Seeking to Enforce Judgment. An appellant who secured a personal judgment in the lower court for the full amount prayed for, but was

denfed a lien on certain property to secure payment of the claim, and appeals, does not waive his appeal by filing his claim, subsequently to the taking of the appeal, against the estate of the one against whom personal judgment had been entered.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

TUESDAY, JUNE 26, 1917.

SUIT in equity by the devisees and executors of the estate of Sophia G. Watrous, deceased, to set aside a contract entered into between C. L. Watrous, now deceased, and Edward L. Watrous, by the terms of which it is claimed that C. L. Watrous, the husband of Sophia G. Watrous, deceased, elected to take a distributive share in the estate of his wife, and to charge an annuity thereon for the benefit of E. L. Watrous and his wife, Agnes. The reasons for setting aside the contract are: (1) Mental incompetency of C. L. Watrous; (2) fraud and undue influence in securing his signature; (3) no consideration for the agreement; (4) no election on the part of C. L. Watrous to take a distributive share in his wife's estate, she leaving a will which failed to mention her husband, or to give him any part of her estate; (5) no agreement on the part of C. L. Watrous to pay Edward L. Watrous anything, and no basis for any agreement to pay him and his wife an annuity. C. L. Watrous intervened and joined with plaintiffs in the relief demanded. Other issues were tendered, which, in so far as material, will be considered during the course of the opinion. The trial court held that the contract did not bind any part of the estate left by Sophia G. Watrous, but rendered judgment against C. L. Watrous personally for the amount of the annuity. The trial court cancelled the contract, in so far as it created a charge upon the lands of which Sophia G. Watrous died seized, but rendered a judgment against C. L. Watrous individually for the promised annuity. Defendants and intervener appeal.—*Affirmed.*

*Parker, Parrish, & Miller,* for appellants.

*Coffin & Rippey* and *Stipp, Perry, Bannister & Starzinger,* for appellees.

STEVENS, J.—Sophia G. Watrous died

1. WILLS: surviving spouse: attempt to disinherit husband: right to compel election.

testate in Des Moines, Iowa, April 30, 1914. She left surviving her husband, C. L. Watrous, who has died since the trial of this case in the court below, and four children, to wit: Philip and Charles A., plaintiffs herein; Mrs. Marion Watrous Angell, a daughter; and Edward L. Watrous, who, with his wife, Agnes, are parties defendant to this action. The following provisions of the will of Mrs. Watrous are material to this controversy:

"Paragraph I. I direct that my just debts and funeral expenses be first paid.

"Paragraph II. Having heretofore advanced to my son Edward Lacy Watrous, large sums of money, I hereby devise and bequeath to him the sum of $3,000 to be paid in three annual installments of $1,000 each, and because of such advancements or loans, I hereby direct that he shall have no further share, part or parcel in my estate.

"Paragraph III. I hereby give and bequeath the rest and residue of my property, personal, real and mixed, to my daughter, Mrs. Marion Watrous Angell, to my son Philip Bernard Watrous, to my son Charles Albert Watrous, share and share alike.

"Paragraph IV. I nominate and appoint to serve as executors of this my will without bond: Philip Bernard Watrous, Charles Albert Watrous."

This will was executed March 12, 1914. On June 4, 1914, this will was duly admitted to probate in Polk County, and the executors named therein were duly appointed and qualified as such.

The estate of the decedent is valued at something over $200,000. It will be noticed that her husband is not mentioned in the will, and that Edward was given but $3,000 of the estate, the remainder having been devised to the other three children. The will was filed for probate May 5, 1914, and on May 30th, Simon Casady, of Des Moines, was appointed special administrator. On May 29, 1914, Edward L. Watrous filed objections to the probate of the will. Over date of June 2, 1914, what purports to be a contract between C. L. Watrous and Edward L. Watrous was entered into, and this contract was filed for record with the county recorder on June 3, 1914. This contract is as follows:

"Whereas Sophia G. Watrous, of said city of Des Moines, departed this life on April 30th, A. D. 1914, leaving a last will and testament, which was filed in the office of the clerk of the district court of the state of Iowa, in and for Polk County, on May 5th, A. D. 1914, by the terms of which she gives and bequeaths to said Edward L. Watrous the sum of $3,000 in cash, and divided the remainder of her property equally among her other children, viz.: Marion Watrous Angell, Philip B. Watrous and Charles A. Watrous, share and share alike; and

"Whereas, said Edward L. Watrous, on May 29, A. D. 1914, filed objections to the probate of said will, and a contest thereof is thereby created and now pending; and

"Whereas, on May 30, A. D. 1914, Simon Casady, Esquire, of the city of Des Moines, Polk County, Iowa, was duly appointed special administrator of the estate of said Sophia G. Watrous by said Polk district court, in the cause entitled, 'In re Estate of Sophia G. Watrous, deceased,' No. 8693 Probate, and is now qualified and acting as such special administrator; and

"Whereas, the said Charles L. Watrous, as surviving husband of said Sophia G. Watrous, under the laws of

the state of Iowa, notwithstanding the provisions of said last will and testament, is the owner of an undivided one-third interest in and to all of the property, both real and personal, and mixed, of which said Sophia G. Watrous died seized and possessed; and

"Whereas, both of the parties hereto desire to prevent a further contest of said will, and to settle and adjust all differences between the surviving children of said decedent, with reference to said will and said estate, in an amicable and friendly manner: Now therefore, it is agreed as follows, to wit:

"1st. That the objections of said Edward L. Watrous to said will be forthwith withdrawn and dismissed, and that, so far as said Edward L. Watrous is concerned, said instrument may and shall be admitted to probate as the last will and testament of said Sophia G. Watrous, deceased, and shall never again be questioned, controverted or contested by him.

"2nd. That the said Charles L. Watrous agrees to and does hereby raise, create, establish and declare an annuity of $1,800 per annum in favor of said Edward L. Watrous, payable in installments of $150 per month, on or before the 10th day of each month, commencing with the month of May, A. D. 1914, and continuing so long as said Edward L. Watrous shall live. In the event of the death of said Edward L. Watrous, leaving a widow him surviving, then and in that event, said annuity shall be reduced one half, and shall be payable to such widow in monthly installments of $75 each, so long as such surviving widow shall live, or until her remarriage.

"Said annuity shall be payable in the city of Des Moines, Iowa, at the German Savings Bank, or at such other bank as said annuitant may direct, to the credit of said annuitant, out of and from the assets of the estate of said Sophia G. Watrous, deceased, belonging to said

Charles L. Watrous, and, upon failure to pay any installment thereof, the same shall bear interest at the rate of 8 per cent per annum from date of default, and may be enforced and collected, along with the costs and attorneys fees.

"3rd. In order to secure the annuity, interest and costs aforesaid, said Charles L. Watrous agrees to and does hereby make the same a charge and lien upon his individual interest, and upon the income and proceeds of sales of his interest in the estate of said Sophia G. Watrous, deceased.

"Done at the city of Des Moines, Polk County, Iowa, on this the 2nd day of June, A. D. 1914.

<div style="text-align:center">

"(Signed) Charles L. Watrous,

"Edward L. Watrous.

</div>

"In the presence of

"Joseph C. Picken,

"James C. Hume."

On November 18, 1914, Philip and Charles A. Watrous served a notice upon Charles L. Watrous, requiring him to elect as to whether he would accept and consent to the terms of the will; and on the same day, Charles L. Watrous filed with the clerk of the court, and had entered of record, his election to accept and be bound by the terms of the will. From this we quote the following:

"I hereby elect to accept and to be bound by the terms and provisions of said will, and waive all my rights, interests and claims as surviving husband of said Sophia Glover Watrous, deceased, and hereby assign, set over, transfer, and convey any and all of my rights, titles, interests, liens, and claims in and upon and to said estate absolutely and in fee simple to said Marion Watrous Angell, Philip Bernard Watrous, Charles Albert Watrous, share and share alike as provided in said will."

Ths action was commenced shortly thereafter by the

two sons, Philip and Charles A., against Edward L. and his wife Agnes, to set aside and cancel the contract between the said defendants and Charles L. Watrous, for the reasons: First, that Charles L. Watrous never acquired any interest in the estate of his wife, or any such interest as that he could create a lien or charge thereon; that he elected to accept and be bound by the terms of her will, as by statute provided, and never acquired any interest in his wife's estate. Second, that, at the time of the making of the contract with his son Edward and his wife, Charles L. was mentally incompetent to make such a contract as is here involved. Third, that said contract was obtained from him when he was ill and suffering from great physical and mental pain, and was under the influence of medicines, by fraud and undue influence, and that he signed the same through a mistaken belief as to the contents thereof. The relief prayed was the cancellation of the contract, and a decree quieting plaintiff's title to the property.

Defendants, Edward L. and his wife, Agnes, appeared and filed answer, denying, both generally and specifically, most of the allegations of the petition, and also pleading that the contract between them and Charles L. Watrous was upon a good consideration, to wit, the dismissal of their contest of the will of the deceased; that it was knowingly and intentionally entered into by Charles L. Watrous with the consent of, or upon the suggestion of, their sister, Marion W. Angell; and that their rights therein are superior to any of the claims of plaintiffs. They also aver that Charles L. Watrous elected to take a distributive share of the estate, rather than to abide by the will; and that his subsequent election to abide by and consent to the will is of no validity, fraudulent and void.

Charles L. Watrous intervened in the action, and filed a petition, which substantially adopted the allegations of

plaintiff's petition regarding the making of the contract and his capacity to enter into the same, and he joined in asking the relief prayed by plaintiffs. Defendants then filed a pleading in answer to the petition of intervention, and a cross-petition against Charles L. Watrous, in which they asked the following relief:

"That his petition of intervention be dismissed upon its merits; that said annuity contract, Exhibit 2, above set forth, be found and decreed to be, in all respects, valid and binding, and to create a lien for the annuity thereby raised and created upon one third in value of all the legal and equitable estates in real property, and one third in value of all personal property, not necessary for the payments of debts, of which Sophia G. Watrous, wife of the said Charles L. Watrous, on April 30, 1914, died seized and possessed; that said Edward L. Watrous have judgment against said Charles L. Watrous for the amount now due and owing to him as above set forth, with legal attorneys' fees and costs, and that defendants have such other and further relief as they may be entitled to in equity."

The amount asked by way of a money judgment was for eight monthly installments of the annuity of $150 each.

Upon the issues joined, the case was tried to the court, resulting in a decree for plaintiffs and a judgment for defendants against the intervener for the amount of the annuity then due. The decree as entered makes the following findings of fact:

"That the contract made and entered into between Edward L. Watrous and Charles L. Watrous, dated June 2, 1914, as between the parties thereto, and also in so far as it is made for the benefit of the defendant, Agnes B. Watrous, is a valid and subsisting contract, except as hereinafter found and determined, for which Edward L.

Watrous parted with a valuable consideration in dismissing his contest to the will of Sophia G. Watrous, deceased, which consideration cannot be returned to him.

"That the evidence is insufficient to find that any fraud, misrepresentation, duress or undue influence was practiced or exercised in obtaining said contract.

"That Charles L. Watrous, at the time said contract was made, did not understand that he was making said annuity payable out of the estate of Sophia G. Watrous, deceased, or was creating a lien upon the interest in the estate of Sophia G. Watrous, deceased, which might accrue to him as her surviving husband, but as to each and all the other provisions of said contract, said Charles L. Watrous had sufficient understanding.

"That prior to making the contract with Edward L. Watrous, which contract is dated June 2, 1914, Charles L. Watrous had verbally elected to be bound by the terms of the last will and testament of Sophia G. Watrous, deceased, and subsequently elected by a written election filed in this court on November 18, 1914, and recorded in Probate Journal 61, page 469 of its records.

"That the contract of June 2, 1914, between Edward L. Watrous and Charles L. Watrous, did not and does not constitute an election on the part of Charles L. Watrous to claim his survivor's third, nor any part thereof, in the estate of Sophia G. Watrous, deceased.

"That Philip B. Watrous and Charles A. Watrous, plaintiffs in this action and proponents of the will of Sophia G. Watrous, deceased, are not estopped from objecting to the contract of June 2, 1914, between Edward L. Watrous and Charles L. Watrous, nor are they estopped from maintaining this action.

"That, upon the death of Sophia G. Watrous, the right of Charles L. Watrous in her estate was not a vested interest, but a mere personal option or privilege, and was

not such an interest as could be made subject to a lien, or transferred or conveyed by Charles L. Watrous."

We shall first treat the case as if there were no issue of mental incapacity, fraud, mistake or undue influence, and determine whether or not the contract made between Charles L. Watrous and his son, Edward L., and his said son's wife, is of any validity. This depends primarily upon whether or not the surviving husband took anything in the estate of his deceased wife which he could encumber by contract. On this issue, the case must be determined under the provisions of the statute law of the state. Section 3270 of the Code, so far as material, reads as follows:

"Any person of full age and sound mind may dispose by will of all his property, subject to the rights of homestead and exemption created by law, and the distributive share in his estate given by law to the surviving spouse, except sufficient to pay his debts and expenses of administration; but where the survivor is named as a devisee therein, it shall be presumed, unless the intention is clear and explicit to the contrary, that such devise is in lieu of such distributive share, homestead and exemptions."

Section 3366, Code, reads as follows:

"One third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him. The same share of the real estate of a deceased wife shall be set apart to the surviving husband."

Section 3376, Supplement to the Code, 1913, provides:

"The survivor's share cannot be affected by any will of the spouse, unless consent thereto is given within six months after a copy thereof has been served upon the survivor by the other parties interested in the estate, and

notice that such survivor is required to elect whether consent thereto will be given, which consent, when given, shall be in open court, or by a writing filed therein, which shall be entered on the proper records thereof; but if at the expiration of six months no such election has been made, it shall be conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder."

Section 3369, Code, reads as follows:

"The survivor's share may be set off by the mutual consent of all parties in interest, or by referees appointed by the court or the judge thereof, the application therefor to be made in writing, after twenty days from the death of the intestate and within ten years, which application must describe the land in which the share is claimed, and pray the appointment of referees to set it off."

It will be noticed that part of the first section quoted is inapplicable, as the surviving husband, Charles L. Watrous, is not named as a devisee in the will, and there is no presumption arising from a devise in his favor that this was in lieu of the distributive share allowed a husband by law. That section does provide, however, that every disposition of property by will of a husband or wife is subject to the distributive share given by law to the survivor. Section 3366 thus defines that share:

"One third in value of all the legal or equitable estates in real property possessed by testator [or testatrix] at any time during the marriage * * * shall be set apart as her [or his] property in fee simple, if she [or he] survive him [or her]."

Section 3369 provides for the setting off of this share, and that application therefor shall be made within ten years from testator's or testatrix's death.

Section 3376 has reference to the effect of a will upon the distributive share, and says, in substance, that the

share cannot be affected by any will of the spouse, unless consent thereto is given within six months after a copy of the will has been served upon the survivor, and that the consent, when given, shall be in open court, or by writing filed therein, which shall be entered upon the proper records thereof. It also provides that if, at the expiration of six months after notice is given, no election has been made, it shall be conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder. The election which the surviving spouse is, by the above statutes, required to make, is: (a) To consent to the provisions of the will; or (b) to refuse to consent thereto. If such survivor elects to consent to the provisions of the will, such election, when made, is inconsistent with and bars his or her right to take the distributive share of the estate of the deceased spouse. On the other hand, if the survivor elects not to consent to the provisions of the will, the effect of such election is to render any provision made by the will for the benefit of such survivor inoperative, and the survivor will take the distributive share provided by law. If, however, the survivor neglects or refuses to elect to consent to or reject the provisions of the will within six months after receiving the statutory notice, the law conclusively presumes an election to consent to the provisions of the will.

In the case at bar, testatrix made no provision in her will for her surviving spouse, who is the intervener herein, but this fact in no wise renders inapplicable the statute requiring him, upon receiving the notice provided by statute, to elect whether or not he will consent to the provisions of the will. The statute is designed not only for the purpose of preventing the husband or wife from disposing of his or her property in such a way as to deprive the survivor of one third in value thereof without the consent of such survivor, but also to facilitate the settlement of

estates, and to fix and settle the title to property belonging thereto. The surviving spouse has the absolute right to elect not to consent to the provisions of the will, the effect of which is to give such survivor absolutely an undivided one-third interest in value of all the property, real and personal, of which the deceased spouse died seized.

There would seem to be no valid reason why the survivor may not be required to elect whether or not he or she consents to the provisions of a will which disposes of the whole estate of the deceased spouse to persons other than such survivor, as well as in a case in which some provision is made by the will for the surviving spouse. As above stated, the election required presents to the survivor the option of consenting to or rejecting the provisions of the will and the disposition made thereby of the property of the deceased spouse. The effect of such election may be to deprive the survivor of his or her distributive share, or of any interest whatever in the estate of such deceased spouse; but, except in so far as the beneficial results of such election may tend to influence the decision of the survivor, same is merely incidental to the question of election. Whether the survivor elects to consent to or reject the provisions of the will of a deceased spouse depends entirely upon the voluntary action of the survivor, who is given a period of six months after the service of notice in which to reach a conclusion. The statute contemplates that such survivor shall have a reasonable time in which to determine whether to elect to consent to the disposition of the property made by the will of the deceased spouse or to insist upon the share which he or she is entitled to under the statute, if the election is to refuse to consent to the provisions of the will. If the will of the deceased spouse makes some provision for the benefit of the survivor, then the effect of the election to consent to the provisions of the will entitles such survivor, as a devisee under the

will, to take whatever is given him or her thereby, but
neither the right nor duty to elect is in any sense de-
pendent upon the generosity, or the lack thereof, on the
part of the deceased spouse toward the survivor.

II.   As before stated, on November 18,
2. WILLS: surviv- 1914, Charles L. Watrous elected in writing
ing spouse: will
and distribu-    to consent to the provisions of the will.   It
tive share:
election: acts   is, however, contended by appellants Ed-
not constitut-
ing.             ward L. and Agnes B. Watrous that: (a)
By the execution of the contract of June 2, 1914, he elected
not to consent to the provisions of the will; (b) on the
death of his wife, he became vested with an undivided one-
third interest in her property, subject to be divested there-
of by an election to consent to the terms of the will.

It was held in *Arnold v. Livingston,* 157 Iowa 677,
that the fact of an election by the survivor might be proved
by other evidence than the record of the court, and
that such election could be thus made without waiting for
the service of notice to elect.  In *Berry v. Donald,* 168
Iowa 744, the court held that the evidence of such election
to take under the will, in lieu of distributive share, must be
clear and satisfactory.

Intervener and his wife had lived apart for a number
of years, and both were possessed of property of consider-
able value.   Shortly after the death of testatrix, an
effort was made by some of her children to settle and ad-
just all controversies with Edward L. amicably.   To this
end, one of the legatees named in the will caused a contract
to be prepared, providing that, from the net income of the
estate, Marion Watrous Angell, daughter, and Philip Ber-
nard and Charles Albert Watrous, sons, should each first
receive $150 a month, and Edward L., out of the remaining
net income, an annuity of $150 a month; and after his
death, if survived by his wife, Agnes B. Watrous, she
should receive $75 a month so long as she lived and did

not remarry, Edward L. to release the bequest made to him in his mother's will and make no further objection to its admission to probate.

Edward L. testified that he submitted this contract to his father and talked it over with him, as the result of which an attorney was employed to prepare a contract embodying different terms. After Edward L. had filed objections to the admission of his mother's will to probate, a second contract was submitted to him by one of the plaintiffs, embodying substantially the same provisions as the former, except that the objections to the admission of the will to probate were to be withdrawn.

Mrs. Angell visited her father upon different occasions before and during his illness, and urged that some arrangement be made by which an annuity would be provided for Edward L. out of his interest in his wife's estate. The latter also talked to his father about it; urging that he was the owner of one third of the estate, and that he had a right to make provision therefrom for an annuity.

The contract finally executed was the result of the negotiations had between the parties last above named. Charles L. testified, in effect, that he desired that some provision be made for the maintenance and support of Edward L. and Agnes B. Watrous. He further testified, in part:

"I felt what I did I wanted to do myself when I was able to think more. I said what I did I wanted to do myself and not interfere with anything my wife had done. * * * At the time I signed the contract, there was no thought or purpose in my mind that I was interfering in any way with Mrs. Watrous' will, and the first I have any recollection of any lien being mentioned was when I read this contract, and I didn't at the time understand or comprehend what it meant. * * * Mr. Hume, Edward and a stranger was there. I don't recall anybody else. The

conversation was very short. When they came in there, I seen the paper. I made no objection except to the lien. That disturbed me. I hadn't heard of it before and I was afraid that was not right, and I asked Mr. Hume. I knew he was an attorney and ought to know, and I knew I was not fit to know, and I asked and he answered, and I relied entirely upon what he said. I knew he ought to know. He said it would not affect the handling of the rest of the property; that I had so much that was mine and I had a right to do it, and as far as I know—now I don't remember other conversations at all. Q. Well, did you realize or understand that you would have to make a claim adverse to Mrs. Watrous' will in order to carry out that contract? A. No, I did not."

He further testified that, shortly after the death of his wife. he met Edward L. on the street in Des Moines, who asked him if he had seen his mother's will, to which he replied:

"No, I hadn't seen anything about it; and he said, wouldn't I like to? and I said it was nothing to me; that she had done what she wanted."

Referring to the time when the contract was executed, he further testified:

"My recollection of that is very dreamy. And then at the end of the document, there was that matter of the lien, and I had not heard anything of that before from either of my children, and it was something new and disturbed me; and I asked Mr. Hume—this is my recollection—as a lawyer whether that would affect the handling of the rest of the property in settling it up, and I understood him to say, 'No.' Just how I inquired and just how he answered, I am not certain; but I am certain that what he said satisfied me, and I rolled over on my left side and wrote my name. * * * I heard from two of the children that they were talking about allowing Edward some al-

lowance in the way of an annuity, and I didn't understand that there was any objection on anybody's part to that, except that they said Philip refused to sign anything. I don't know what they talked about among themselves. * * * I understood that he, Edward, was willing to give up everything, provided he had an annuity; but I didn't understand that I in any wise contracted with him to do anything, except that I contracted to surrender a certain share of my wife's property, which I was told I had a right to do, and that was all that I knew of it."

Questioned as a witness, regarding the election of November 18th, he testified:

"I thought I understood it when I signed it, and I believe I understand it now. *It is an election in accordance with my intent and purpose and wishes all the time.*"

Later, when he had recovered from his illness, he wrote to his son Edward as follows:

"As to the lien on your mother's property, I did not realize that what I did was giving any such thing, and now that I am to see that, out of my own property, if not otherwise, you get the $1,800 a year, I wish you would authorize me to get some lawyer to make a proper renunciation on your part of that lien. It will bring you no further dollar than my contract, for you know I am able; but a good lawyer here says that it will hinder handling the property in order to exchange or improve it so as to get the best results out of it. Now, since you are to get your $1,800, which you want, will you not do that for me? Then I shall be freed from a feeling that I have burdened them unnecessarily."

It is quite apparent, from the foregoing statements of his purpose, intention and understanding of the transactions here involved, that, at the time the contract was executed, he was under the impression that he had a right to incumber any interest which he might have in his wife's

estate for the payment of an annuity to Edward L., and he was willing to take such part thereof as was necessary to pay the annuity. It is equally apparent that he at no time intended to take a full distributive share in his wife's estate. He did not want to interfere with, or in any way prevent, the carrying out of the terms of her will, nor to take any part of the estate for himself, but evidently was induced to believe that he could provide for the payment of an annuity out of the share he had a right to take, without doing that which would amount to an election, or estop him from subsequently electing to consent to the provisions of the will. In this he was mistaken. The reference in the contract to his legal interest in his wife's estate is a mere statement of the interest to which, under the law, he was entitled, and not a declaration of an intention to elect to take same. The evidence falls far short of establishing an election on his part, prior to the election in writing filed in the office of the clerk of the district court.

The next proposition of appellant is 3. WILLS: surviving spouse: attempt to disinherit: nature of vested right. that the husband became seized, immediately upon the death of testatrix, of an undivided one-third interest in her real estate; and that, at the time of the execution of the contract, he had a perfect right to incumber the same; and that the subsequent written election did not affect the lien.

"It is not correct to say that, immediately upon the death of the wife, the surviving husband becomes vested by operation of law with an absolute title to a one-third interest in the land of which she dies seized. He does become vested with a right to choose whether he will take such share, or, in lieu thereof, will claim and hold a homestead right in the property, and when such choice is made, it doubtless relates back to the date of the death of his wife." *Piekenbrock & Sons v. Knoer*, 136 Iowa 534.

"It is not correct to say that, upon the death of the

wife, title to a one-third interest in her estate vests, *eo
instanti,* in the surviving husband. See *Shields v. Keys,*
24 Iowa 298, and second paragraph of opinion in *Pieken-
brock v. Knoer,* 136 Iowa 540. The right which he becomes
vested with is the right of choice between what the law
offers him and the increased or other benefits offered him
by the will." *Robertson v. Schard,* 142 Iowa 500.

Several cases are cited by appellants to sustain their
contention that title vested in Charles L. immediately
upon the death of his wife, among which cases are *In re
Estate of Smith,* 165 Iowa 614, and *Bosworth v. Blaine,* 170
Iowa 296. In the former of the above cases, the language
used was to state the concession of counsel, whereas in
the latter, the question under discussion related to a claimed
election to take the homestead, under Section 3377, and
the question as to whether the title vested in the sur-
vivor was not involved. The remaining cases cited are not
in conflict with our conclusion, and need not be further
considered. In *Waterloo, C. F. & N. R. Co. v. Harris,*
180 Iowa 149, the above cases are cited as holding that the
wife's title vests upon the death of her husband, but the
citation is without discussion or distinction, and the point
here being considered was not before the court.

The settled rule of this state is undoubtedly that
expressed in *Robertson v. Schard,* supra, and *Piekenbrock
& Sons v. Knoer,* supra. Following the holding of these
cases, it is our conclusion that the election of November
18th related back to the date of his wife's death, and the
attempt to create a lien upon or the payment of an annuity
out of her estate failed, and the court rightly cancelled
the pretended lien provided for in the contract above re-
ferred to.

III.   The court below held that inter-
vener was personally liable on the contract
to the defendants for the payment of the
annuity. . Intervener contended that the
contract was without consideration.   We
have set out extracts from his testimony regarding the
execution of the contract, from which we think the inference
should be drawn that he desired to be bound personally
rather than attempt to interfere with the interests of the
legatees named in the will.   He so expressed himself in the
above extract from the letter written to his son. While it is
true that Edward L. did not renounce the attempt to place
a lien upon a part of his mother's estate, the statement con-
tained in his father's letter, together with the other mat-
ters referred to, tend strongly to indicate that Charles L.
intended to personally make provision for his son's sup-
port.   Referring to the contract, Charles L. testified to a
conversation with Edward L. in part as follows:

"Q.   You did agree, then, he was to dismiss his contest
and you were to put this agreement in writing—is that so?
A.   I don't remember that there was anything about dis-
missing the contest to be put in writing.   I think he
wanted me to fix this annuity, and I told him I would.   Q.
To drop everything and have no more fuss?   A.   He said
if I did that, everything would be dropped."

Referring to another conversation between the same
parties, he said:

"I didn't want to have any litigation such as we are
having now.   I have always been willing to do almost any-
thing rather than have litigation, and he said if he had this
kind of an agreement that there would not be any."

While the father obtained no pecuniary consideration
from said contract, the situation and relation of the re-
spective parties at the time the same was executed must be
taken into account.   The estate of testatrix was a large

<div style="margin-left:2em">4. COMPROMISE
AND SETTLE-
MENT: consid-
eration: settle-
ment of family
controversy.</div>

one; intervener was also well fixed; the sum given Edward
L. by his mother's will was much less than that given to
each of his brothers and sister.   He had instituted proceed-
ings to contest the probate of her will, which were pend-
ing at the time of the execution of the contract.   The son
was without means, in bad health, and compelled to reside
in a climate   suitable to his condition.   The relation be-
tween the father, Mrs. Angell and Edward L. appears to
have been very friendly, and it may be assumed that inter-
vener possessed the solicitude common to parents for the
welfare of an invalid son and his wife, and, as stated by
him, he was interested in having the pending litigation
between the respective members of his family terminated
and the consequent expenses attendant thereon avoided.
In accordance with the provisions of the contract, Edward
L. dismissed the objections he had filed to the admission of
the will to probate.   We think, therefore, that there was a
consideration which was sufficient to sustain the contract,
and that Charles L. must be held to have bound himself
personally to the payment of the annuity.

"Compromises for the settlement of family difficulties
or family controversies, if at all reasonable, are especially
favored, both in equity and in law; and in such cases, the
court will go further to sustain the same than they would
under ordinary circumstances.   The termination of such
controversies is considered a valid and sufficient considera-
tion for the agreement."   8 Cyc. 504; *Adams v. Adams,* 70
Iowa 253; *Stoddard v. Mix,* 14 Conn. 11; *Moon v. Martin,*
(Ind.) 23 N. E. 668.

IV.   It is contended by appellants Ed-
ward L. and Agnes B. Watrous that the
plaintiffs are estopped from asserting the
invalidity of the lien above referred to, for
the reason that, at the time the will of
Sophia Glover Watrous was admitted to probate, they had

5. ESTOPPEL:
equitable estop-
pel: opportuni-
ty to avoid in-
jury: effect.

constructive notice of the annuity contract, by reason of the filing thereof in the office of the clerk of the district court of Polk County, and also actual notice of the dismissal by appellant of the proceedings instituted by him for the purpose of contesting the will of his mother. It is asserted that a substantial benefit accrued to appellees by reason of the dismissal of said proceedings, and that, on account thereof, it was their duty to inform appellants that they would not be bound by the attempted creation of a lien by intervener upon the property in question, thereby giving to the said Edward L. Watrous the opportunity of prosecuting the will contest.

This position of appellants' cannot be sustained. The record wholly fails to show any act on the part of appellees which misled appellant or which induced him to enter into the annuity contract with intervener, or to dismiss the contest proceedings. The contract was made after negotiations with the other heirs for a settlement on the basis of a contract embodying many of the same provisions failed entirely. Surely, it cannot be said that their silence, after constructive or even actual notice of the execution of the contract and of the dismissal of the contest proceedings, would operate to create the estoppel contended for. No inequitable conduct on the part of appellees is shown. Mrs. Angell, who asked her father to make provision for the annuity, is not a party to this suit. Furthermore, at the time of the institution of this suit, Edward L. Watrous could have maintained an action for the purpose of having the probate of his mother's will set aside, in which proceedings every substantial legal right which he possessed before the probate of the will could have been urged.

Appellees were not, therefore, estopped to prosecute this action.

V. The remaining questions affecting the validity of the annuity contract will be discussed together.

6. CONTRACTS: validity: mental weakness.

It appears without conflict in the evidence that, at the time of the execution of said contract, intervener was ill and confined to his bed, and the evidence on his part shows that he was very weak, and under the constant care of a nurse and physician. He was examined as a witness in his own behalf, and testified fully regarding the transaction and conversations leading up to the consummation of the contract in question. While his recollection as to many of the details and some of the important matters in connection therewith is apparently uncertain and indistinct, yet, upon the whole record, we are not convinced that he signed the contract without so understanding its terms and conditions as to make the same invalid upon that ground. Intervener was, at the time, about 77 years old. In early life, he was admitted to the bar, and for several years practiced his profession, and appears to have been a man of rugged mental capabilities and large business experience. He appears to have grasped the significance of the contract and to have understood its terms, except that he maintains that he did not understand the full effect of the provision which sought to create a lien upon the property which he might receive from his wife's estate. The contract is in no sense an unnatural or unreasonable one, but, in view of the condition of his son's health and the probable impecunious condition of his wife that would follow the death of her husband, if she survived him, his consideration for them may well have induced the father to execute the contract in question.

This court has held that, in order to avoid a contract on the ground of mental incompetency, more than mere weakness of the mind or unsoundness to some degree must be shown. It must appear that he was incapable of under-

standing or comprehending the meaning, to a reasonable extent, of the instrument executed. The evidence failed to show that the mental faculties of intervener were so far impaired, either by disease or bodily weakness, as to render him incapable of reasonably comprehending and understanding the transaction in question, at the time of making the contract. *Elwood v. O'Brien,* 105 Iowa 239; *Brockway v. Harrington,* 82 Iowa 23.

Without setting out the evidence in detail, which would unduly extend this opinion, suffice it to say that we have carefully read the record, and are satisfied that intervener was not, at the time of the execution of said annuity contract, of unsound mind to such an extent as to render said contract void. The attorney and notary who were present when the contract was signed and acknowledged, testified at length regarding the transaction, and their testimony, together with the understanding and recollection of Charles L. Watrous as to what was said and done at the time the contract was signed, removes all doubt as to his mental condition. In our opinion, the evidence does not show that intervener was induced to make the annuity contract by fraud, duress or undue influence.

VI. Appellant intervener attempted to offer in evidence the testimony of Philip Watrous to the effect that Edward L. Watrous stated to him that he knew that the charges set forth in his objections to the probate of the will were not true, but that he understood that it was necessary to put something of record in order to prevent the probate of the will; that he was not after Philip at all, but his brother Charlie. This evidence, upon objections, was excluded by the court. Counsel, however, made their offer of record, and we assume that the offer embraced all of the material matters to which the witness would have testified. We think this evidence was clearly admissible, as

7. COMPROMISE AND SETTLEMENT: consideration: dismissal of groundless suit: evidence.

bearing upon the individual liability of Charles L. Watrous.

The rule seems to be that a compromise of a suit for which there was no ground, and which was not brought in good faith, is no consideration for a contract of settlement. *Sullivan v. Collins*, 18 Iowa 228; *Tucker v. Ronk*, 43 Iowa 80; *Potts v. Polk County*, 80 Iowa 401. We have. however, reached the conclusion, from all the facts and circumstances before us, that there was a sufficient consideration to support the contract, and that, giving the same effect to the statement of counsel as would be required if the evidence had been received, the same is insufficient to change the result, and we will not, therefore, reverse the case because of the exclusion of this testimony.

8. APPEAL AND ERROR: abstracts: appeal by both plaintiff and defendant: sufficiency of abstract.

VII. The defendants have filed a motion to dismiss the appeal of intervener upon the ground that he failed to cause an abstract to be filed within the time required. by the rules. Notice of appeal was served by the defendants on the 7th, and by intervener on the 26th, day of June, 1915. Within the time required, defendants filed their abstract, failing, however, to include therein the record of intervener's appeal, whereupon intervener filed an amendment to appellants' abstract, in which the record of his appeal was shown.

We think the motion should be overruled. It could serve no good purpose for appellants to file duplicate abstracts, and no prejudice is shown to have resulted to anyone from the failure of intervener to file a separate abstract.

9. APPEAL AND ERROR: right of review: waiver: seeking to enforce judgment.

Plaintiffs have also filed a motion to dismiss the appeal of defendants on the ground that, after the decree was entered finding Charles L. Watrous personally liable for the annuity, and a personal judgment was rendered against him, Edward L., after the death

of intervener, filed a claim therefor against his estate. He did not thereby waive his right to prosecute this appeal, and this motion is also overruled.

For the reasons pointed out, this cause is, both upon defendants' and intervener's appeal,—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.