ELLEN SHANNON, Appellee, v. MARY DERMODY et al., Appellants.

**DEEDS:**  **Setting Aside—Fraud and Duress.**  Evidence reviewed, and held that the grantor in deeds executed the same without fraud or duress, and for the purpose of waiving her apparent rights of dower, and in accordance with a pre-existing but lost antenuptial contract.

**WITNESSES:**  **Competency—Transaction with Deceased.**  A grantee in a quitclaim deed, defending against the charge that the deed was fraudulently procured, in addition to testifying that plaintiff executed the deed for the purpose of carrying out a lost antenuptial contract between plaintiff and grantee's father may also testify to relevant conversations with plaintiff and the deceased father as to the existence of such a contract.

*Appeal from Adair District Court.—H. S. DUGAN, Judge.*

NOVEMBER 22, 1921.

ACTION in equity, to set aside two quitclaim deeds, by which plaintiff conveyed her dower interest in two tracts of land of 80 acres each, one deed being to Mary Dermody and the other to Thomas H. Shannon, who are stepchildren of plaintiff, and the children of plaintiff's deceased husband. The 160 acres of land in controversy was owned by the husband. Plaintiff also asked that her dower interest be partitioned. There was a decree for plaintiff. Defendants appeal.—*Reversed.*

*Lynch & Byers* and *A. M. Fagan,* for appellants.

*C. E. Berry* and *Carl P. Knox,* for appellee.

PRESTON, J.—Agnes Shannon is the wife of defendant Thomas, and Luke Dermody is the husband of Mary Dermody, and is the administrator of the estate. Michael, the husband of

1. DEEDS: set-
ting aside:
fraud and
duress.

plaintiff, died October 16, 1919, intestate. The deeds in question were executed October 23, 1919, and recorded December 16th. This suit was brought January 24, 1920. Plaintiff and her husband were about the same age, and had been married before. Plaintiff has a son by her first husband, and the deceased had the two . children who are defendants. No children were born to plaintiff and Michael. Plaintiff and deceased were married some 25 or more years ago. At the time of the marriage, the deceased, Michael, owned most of the land in controversy. He acquired a small part of it after the marriage. At the time of the marriage, plaintiff had property of her own—considerable land. Her property was better and worth more than that of her husband. She has property to the amount of $40,000 or more. At the time of the trial, she was between 75 and 80 years old—she says she doesn't know exactly. Was born in Ireland.

Plaintiff's theory as to the grounds upon which she claims the deeds should be set aside is somewhat vague. The petition does not allege that the deeds are forgeries. It does allege that,

if she signed them, she understood that she was signing appli-
cations and papers in relation to the estate; and that the deeds
were obtained by fraud, misrepresentation, and duress on the
part of defendants. As a witness, she testifies that she doesn't
remember signing them, and finally says that she did not, and
that the signatures are not hers. There is an abundance of evi-
dence to show that she did sign them. Her counsel do not
seriously dispute it. The three other persons present when she
did sign them, testify to seeing her sign the deeds. The trial
court found that she did sign them. Plaintiff has not appealed.
Plaintiff does not allege directly that she was of unsound mind
and mentally incompetent to execute the deeds, or that she
is now incompetent. She brings this suit in her own name.
The petition does allege that, at the time she signed the appli-
cation for appointment of Luke as administrator, she was suffer-
ing from poor health and from bereavement of her deceased hus-
band; that at that time she was in no condition, either physically
or mentally, to transact business of any importance; that she
had no knowledge that she was signing away her dower rights in
the real estate in question; and that the deeds were procured
by fraud, and without consideration. The testimony of plaintiff,
as a witness, is to the effect that she was ill after her husband
died, and that her memory was not good. She testifies also to
other circumstances before and after her husband died, which
bear on the question of mental incapacity. Another lady, who
is related to plaintiff, gave some testimony tending in the same
direction. She noticed that plaintiff was forgetful, and says
that, when plaintiff would come to the home of witness, she
would take plaintiff back, because she was afraid to let plaintiff
go alone; that she was at the home of plaintiff and her husband
before his death quite frequently; that there was no one there
helping plaintiff with the work there before his death; that his
ailment was kidney trouble; that she was doing all the waiting on
him, so far as witness knew; and that she was alone with him
there. Another witness testifies that plaintiff had a sick spell in
December; she had lumbago. She afterwards recovered from
that. Another witness testifies—a neighbor who had known
plaintiff for ten years—to being in the home a few minutes after

plaintiff's husband died. She says she was at the home occasionally—an hour the first day after he died.

"Q. Did you see or observe anything of Mrs. Shannon that would indicate anything out of the ordinary or unusual about her comprehending or understanding things taking place there at the time of his death, or shortly after? A. Any person would be, after a death; she was kind of upset, and seemed to be bothered a good deal with grief mostly."

This is the character of the evidence bearing on this question, and is the substance of it. On the other hand, a large number of neighbors and intimate acquaintances, business men, and bankers, with whom plaintiff did business, testify that she was competent; that she did attend to her own business and property, consisting of her farm and several town properties and her money. Plaintiff herself testifies that she looked after her own properties, collected the rent and looked after the repairing; that she always attended to her own business, and her husband did to his.

We feel so sure about it that we are not disposed to go into these last two propositions more fully. We are satisfied that plaintiff signed the deeds; that she was competent to do so; and that she knew what she was doing. The three witnesses present at the time the deeds were signed and executed so testify, and say that the entire situation was discussed with her, in regard to an antenuptial contract, and in regard to the fact that the two children of deceased had, for some years, each occupied the 80-acre tracts later deeded to them by plaintiff, and that plaintiff's claim of $1,000 against her husband's estate should be allowed without contest. It was claimed by defendants, or one of them, that the $1,000 note of deceased had been paid, or partially paid, and that this was stated to her before the deed was executed. Her claim was allowed in full by the administrator; that a monument should be erected and paid for out of the estate; and that plaintiff's name should appear thereon. Plaintiff did assist in the selection of the monument, and it has been erected at the grave of her husband, with plaintiff's name thereon. The three persons other than plaintiff who were present at the execution of the deeds testify that, after a full explanation, and after the deeds had been read over to plaintiff

and the other matters discussed, and after the agreements in regard to the monument and plaintiff's claim, and after a discussion as to the occupancy of the lands by the two defendants, and as to the antenuptial contract, plaintiff agreed to and did execute the deeds.

It is alleged by defendants that, prior to the marriage of plaintiff and Michael, she and her husband entered into a written agreement, by which neither would share in the other's property, or have any rights by their marriage in and to the other's property; that since the marriage plaintiff's property has increased more in value than Michael's; that, at the time of plaintiff's marriage, defendants Mary and Thomas were living with their father; that, shortly after the marriage, Michael, with his daughter Mary and son Thomas, moved upon the farm occupied by plaintiff; and that Mary and Thomas were both informed by the plaintiff and by their father that the father had entered into a prenuptial contract with plaintiff, and that neither plaintiff nor the father was to share in the property rights of the other, and that their earnings and accumulations were to be kept separate; that, relying on said statement, Mary and Thomas went upon the farm occupied by plaintiff, and stayed upon the farm for eight years, Mary doing the entire housework, and Thomas caring for the farm and stock, without remuneration therefor, other than ordinary clothing and small items for spending money; that plaintiff's property in her own name amounts at this time to at least $40,000, a large part of which has been derived from the services and work of defendants Mary and Thomas; that, a few years after the marriage of Mary, in January, 1903, she and her husband moved upon one of the 80 acres of land now in dispute, and lived thereon for a period of about 14 years; that Thomas was married about the same time, and he and his wife went upon the other 80-acre tract in controversy, and lived upon the same for about seven years, when he was compelled to go to New Mexico for his health, where he has since resided; that Mary and Thomas, during the time they lived upon the different tracts, made valuable and permanent improvements, including the fences and cross-fences. It appears that the house on the 80 acres occupied by Mary burned down, about the time her father was married to

plaintiff, and that she put on this 80 all the buildings there are. It is further alleged by defendants that the two deeds were executed and delivered by plaintiff with full knowledge of the written prenuptial agreement; with full knowledge of the fact that Mary and Thomas had farmed the 200 acres and helped create the property owned by plaintiff, and had made improvements on the two 80's in question; with full knowledge and understanding that it was the intention of Michael that his children should have the respective 80 acres of land, which was understood by plaintiff herein, and acquiesced in by her; and for the consideration of the erection of a monument according to plaintiff's wishes, and the agreement that the administrator should allow plaintiff's claim of $1,000 against said estate. Plaintiff denies these allegations on the part of defendants.

The case presents almost entirely questions of fact. It would serve no useful purpose to go into the details of the evidence. There is, of course, a conflict at some points. After reading the record, we are satisfied that defendants have met whatever burden there is, if any, resting upon them, and that the matters set up and relied upon by them are sustained by the greater weight of the evidence, except that defendants concede that they have not shown a complete gift from Michael to his two children, by the vesting of the title to them, and they concede that they have not established the alleged antenuptial contract or its terms, in such a way as that it could be enforced as such. But these two circumstances, and the entire situation, and the keeping separate of the property, and other circumstances shown, have a very important bearing upon the motives and purposes of plaintiff in executing the two deeds in question. The evidence on behalf of defendants tends strongly to show that the matter of an antenuptial contract had been discussed among all of them for years, and that it was understood that there was such a contract, by which plaintiff was not to receive any of her husband's property. Though plaintiff denies that there was such a contract, her evidence is somewhat evasive and inconsistent. When asked if she remembered who prepared the contract before the marriage, she said she did not; that her memory is not a bit good. When asked whether she had burned it or torn it up, she says she told Michael, "I don't want you

*or your place;"* that, after she told him that, he took it and
tore it up himself, just before they were married. Witnesses
for defendant testify that she stated to them that there was a
contract, and that she destroyed it. Her statement that she did
not want his place is in harmony with the claim of defendants
that there was a contract that she was not to have it, and that
she was to have her own. There was more reason for plaintiff's
wanting an antenuptial contract than for Michael to want it.
It was to her advantage to have such a contract, because she
had the greater amount of property. Plaintiff had one living
child, besides one who had disappeared; and under such an
agreement, her children would inherit her property. Michael
had two children; and it is quite clear that it was his desire that
his children should have the two 80-acre tracts in controversy,
and that plaintiff made the deeds to carry out that purpose and
to vest the title in the two defendants. This is the more reason-
able and more probable theory, and is sustained by the evidence.
Under all the circumstances of the case, the equities are with
defendants. We are satisfied from the evidence that there was
an antenuptial contract. As said, it appears from the testimony
of the defendants and others that the matter was frequently
discussed by plaintiff and her husband, in the presence of de-
fendants many times, and for substantially the entire period of
the married life of plaintiff and Michael; that it was under-
stood that Michael intended his two children to have the 80-acre
tracts in question; and that plaintiff acquiesced therein. We are
well satisfied that the plaintiff executed the two deeds in ques-
tion voluntarily and knowingly, because of the understanding
between all of them, which had existed for years, and to carry
out her husband's wishes. Reading the entire record, we are also
of the opinion that there was no fraud, misrepresentation, or
duress, on behalf of the defendants, inducing plaintiff to execute
the deeds.

There is some dispute as to whether the application for the
appointment of Luke as administrator was signed by plaintiff on
October 21st or 23d. Though plaintiff says her memory is poor
as to what took place at the time the deeds were executed, on
the 23d, she does say that she did sign the application for ap-
pointment of administrator, and that the subject of her claim

was discussed, and that she did sign the claim which is dated October 23d. She also says that the matter of the tombstone was discussed, but does not remember seeing the agreement signed by the administrator, providing that the tombstone should be erected and paid for out of Michael's estate. As before stated, the other three present at the time testify fully as to all that was said and done, and that all matters were discussed and agreed to, and the deeds executed. Plaintiff does not testify that there was any substitution of the deeds for other papers, and that her signature was obtained to the deeds thereby. No one testifies to that. The argument is that this must be so because other papers were signed, and because plaintiff does not remember signing the deeds, or that they were mentioned.

Another circumstance relied upon by plaintiff is that Mr. Fagan took with him, on the afternoon of October 23d, blank quitclaim deeds. Briefly, his explanation of this is that he had been to plaintiff's home in the morning, in regard to some insurance business; that he had been told that there was an antenuptial contract, as claimed, and supposed that, if there was such a contract, she would execute the quitclaim deeds; and that, when he, with Mary and her husband, went to plaintiff's home in the afternoon of the 23d, he took with him blank deeds, inventory, and so on. She says that she inquired about her dower rights. Mr. Fagan says he told her that she was entitled to her third, unless there was an antenuptial contract providing otherwise. There may be some other circumstances in the record bearing upon this question. We have not attempted to give the evidence in detail on this or any other subject in the case. The record is somewhat voluminous. In our opinion, the finding of the trial court that defendants took undue advantage of plaintiff is not sustained by the record.

It is thought by appellee that the testimony of defendants in relation to the alleged antenuptial contract is not competent, and that the witnesses are incompetent to testify to any personal

2. WITNESSES: competency: transaction with deceased.

transactions with Michael Shannon, deceased, in reference thereto. The conversations testified to were, for the most part, with the plaintiff or with deceased in her presence, or with both of them. The defendants are not claiming this land from their father. The cir-

cumstances in regard to the antenuptial contract and the occupancy of the land by defendants are relied upon, not as showing a completed gift of the land by deceased, or the antenuptial contract as such, but as a reason why plaintiff executed the deeds in controversy. The transaction now is between plaintiff and the defendants. She brings the suit. We think the evidence is competent for this purpose, as against the plaintiff.

It is contended by appellants that compromises for the settlement of family difficulties or family controversies, if at all reasonable, are especially favored, both in equity and in law; that in such cases the court will go further to sustain the same than they would under ordinary circumstances; and that termination of such controversies is considered a valid and sufficient consideration for the agreement. They cite *Adams v. Adams,* 70 Iowa 253; *Armijo v. Henry,* 14 N. M. 181 (25 L. R. A. [N. S.] 275, and note) ; *Hoy v. Hoy,* 93 Miss. 732 (25 L. R. A. [N. S.] 182) ; 8 Cyc. 504; *Norris v. Slaughter,* 3 G. Greene 116. See, also, *Watrous v. Watrous,* 180 Iowa 884, 906. Their contention is, in the main, as we understand it, that there was a family controversy as to the two 80-acre tracts of land; that, under an antenuptial contract and the possession of the land, it was intended by deceased and plaintiff that the two defendants should have the land; that the allowance of plaintiff's claim for $1,000, and so on, indicates such an understanding; and that all matters of difference between them were amicably settled on October 23d. We deem it unnecessary to review the cases. Some other cases are cited on other propositions, but what has been said is decisive of the case.

The judgment is reversed and remanded, with directions to enter a decree in favor of defendants, dismissing plaintiff's petition.—*Reversed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.