OLE GJERDE, Appellee, v. A. G. THELANDER, Appellant, et al., Appellees.

**TENDER:** Sufficiency—Tender to Fraud-doer. The payee of a mortgage-secured note, who has been fraudulently induced by the maker to surrender it, and in lieu thereof to receive and accept from the hands of the said maker the worthless note of a *third* party (which worthless note the said maker had himself secured in order to carry out his fraud), may, on discovering the fraud, rescind by tendering the worthless note *to the perpetrator of the fraud,* and not to said *third* party.

**FRAUD:** Nonaffirmance of Fraud. The payee of a mortgage-secured note, who has been fraudulently induced by the maker to surrender the note and mortgage and to accept in lieu thereof the worthless note of a third party and a mortgage on the same property, and who, on discovering the fraud, rescinds the contract and prays for a reinstatement of the original note and mortgage and a foreclosure thereof, *does not affirm the fraud* by a prayer for the foreclosure of the "*mortgages,*" it appearing that no personal judgment was asked against the third party (who was a party to the action), and that said third party was in default, and was not complaining of the foreclosure.

*Appeal from Winnebago District Court.—J. J.* CLARK, *Judge.*

JUNE 24, 1924.

SUIT in equity, to re-establish personal liability against defendant Thelander upon a note, a previous surrender of which by the plaintiff had been fraudulently obtained from the plaintiff, as alleged; and to re-establish also a mortgage and the lien thereof, a previous release of which had been likewise obtained. The defendant Swingen was a junior lien holder, and presented a cross-petition as against the defendant Thelander, wherein he asked, as against Thelander, relief similar to that prayed by plaintiff, upon notes and mortgages previously held by him, the surrender and release of which had been fraudulently obtained from him, as alleged. Thelander alone defended. He presented similar defenses as against the plaintiff and the cross-petitioner. These were a general denial and a plea of waiver and estoppel. The trial court found for the plaintiff and for the cross-petitioner substantially as prayed, and Thelander has appealed.—*Affirmed.*

*E. H. Johnson* and *Kelleher & Mitchell,* for appellant.

*Thompson, Loth & Lowe,* for appellees.

EVANS, J.—The plaintiff's suit is essentially one to foreclose a real-estate mortgage which had been previously released, and to establish personal liability upon a note secured by such mortgage, which note had been previously surrendered. It is averred that the surrender and release of note and mortgage had been obtained by fraudulent representations, and that plaintiff disaffirms the same. He prays that his previous rights be re-established in equity, because of fraud, and that he have personal judgment upon his note, and foreclosure of the mortgage. He also avers an equitable lien for the amount of his debt, and asks the foreclosure of the same.

The notes and mortgages involved herein arose out of the following sequence of events. In February, 1919, plaintiff, Gjerde, sold his farm by executory contract to Swingen, which contract was to be performed on March 1, 1920. Swingen sold

the same farm by executory contract to Guslin. Guslin sold by executory contract to Thelander. These successive sales were all made prior to March 1, 1920, and were all performable on March 1, 1920. The farm was subject to an existing incumbrance of $10,000, when sold by Gjerde, and is still subject to the same incumbrance, concerning which there is no controversy herein. By mutual arrangement of the parties to the successive contracts of sale, Gjerde conveyed direct to Thelander, on March 1, 1920, subject to the existing incumbrance of $10,000. He received from Thelander a purchase-money note and mortgage for $11,800. At the same time, Swingen, the cross-petitioner, received from Thelander two notes, and junior mortgages securing the same, for $6,000 and $6,100, respectively. The liens now claimed by the plaintiff and by the cross-petitioner are the same as those represented in the foregoing mortgages, and the personal liability claimed is that established by the foregoing notes. The first incumbrance on the land, subject to which Gjerde conveyed it, was to become due July 1, 1921. The mortgages executed by Thelander to Gjerde and Swingen were drawn to mature at later dates. Each of the latter mortgages contained a provision intended to enable Thelander to negotiate a first-mortgage loan upon the farm on and after July 1, 1921. This provision was, in substance, that the mortgagee would release his mortgage, in order to enable Thelander to obtain a first-mortgage loan for such sum as he could obtain; and that, if such first mortgage so obtained by him should exceed $10,000, the amount of the excess should be applied as a payment upon the Gjerde mortgage. It was further provided in each of Swingen's mortgages that, after the transaction of the first-mortgage loan was had, Thelander should then execute a new mortgage, in lieu of the released mortgage. In September, 1921, the plaintiff and cross-petitioner, as mortgagees, entered of record the releases respectively of their mortgages, as agreed therein. A first-mortgage loan of $12,800 was negotiated by Thelander, and its proceeds were applied to the payment of the $10,000 incumbrance and to the partial payment of the Gjerde mortgage, to the amount of $2,800. In the meantime, the land had depreciated to a valuation less than the amount of the incumbrances thus put upon it. In the meantime, also, Thelander purported to

have sold the land, subject to these incumbrances, to defendant Fuchs. Thelander conveyed to Fuchs, subject to these specific mortgages. The foregoing is the background. At this point, the lawsuit begins. The plaintiff and cross-petitioner were induced to surrender to Thelander his notes held by them respectively, and the mortgages executed by him securing the same, and to accept in lieu thereof notes signed by Fuchs and mortgages executed by him upon the same property. Their claim is that they were induced so to do by fraudulent representations as to the personal responsibility of Fuchs. These alleged representations were, in substance, that Fuchs was a man of large means and wholly responsible financially; whereas, in truth, he was a man without any financial resources whatever, and his notes executed and delivered to plaintiff and cross-petitioner were wholly worthless. This presents the one issue of fact upon the record. The only disputed question of law presented pertains to the sufficiency of the petition to entitle the plaintiff. and cross-petitioner to the relief awarded by the trial court.

I. On the issue of fact, the record abundantly discloses that the appellees were in some manner greatly deceived as to the financial responsibility of Fuchs. He had, in fact, no financial responsibility whatever. No reason is apparent in the record why they should have accepted his notes in lieu of those of Thelander if they had known his financial standing. He was wholly unknown to both of them. They acted solely upon information received from other sources. The substance of their testimony is that one Hilstrom, acting as agent on behalf of Thelander, called upon them for the purpose of having a substitution made of the note of Fuchs for those of Thelander; that, in order to induce such substitution, he represented that he knew Fuchs and his financial standing, and that he was a man of large financial means, and of much greater financial responsibility than that of Thelander. Hilstrom, as a witness, denied making these representations. His denial, however, had much qualification and some inconsistency, and, on the whole, does not impress us as persuasive. The clear weight of the evidence is that Hilstrom did make representations that were knowingly false, and that they were effective to induce the appellees to surrender the Thelander notes and mortgages and to accept

those of Fuchs. As against this, it is claimed by the appellant that Hilstrom was not authorized by him to make such representations, and that such representations were entirely outside the scope of his agency; that Hilstrom was a mere land agent or broker; that he was employed by the appellant only to find a purchaser for the land; and that the representations claimed were outside the scope of such an agency. If the premise of fact here urged were sustained by the record, the legal proposition predicated thereon might well be accepted as correct. If Hilstrom had no other authority than to find a purchaser for the land, these representations made by him would not necessarily be binding upon Thelander. But it further appears circumstantially that Fuchs was a mere "dummy" purchaser of the land; that his purchase was a mere form; that he gave nothing of value for the farm; that, after he had executed the notes and mortgages, he thereupon conveyed the property, without receiving any consideration, to a grantee selected by Hilstrom, which grantee conveyed to Hilstrom; that the sole objective of Hilstrom was to secure a release for Thelander from personal liability for the purchase-money notes and mortgages of such farm; and that this was the purpose for which he was employed by Thelander. The circumstances proved were clearly such as to cast a burden of explanation upon Thelander which was not fairly met. We are constrained, therefore, to sustain the trial court in its finding of fact that the surrender and release of notes and mortgages were obtained substantially in the manner alleged. It necessarily follows that the appellees had a right, upon discovery of the fraud, to repudiate the transaction and re-establish their original rights.

II. It is the contention of appellant, however, that the appellees failed to repudiate, in that the method adopted by them failed to effect a rescission of the contract of novation.

1. TENDER: sufficiency: tender to fraud-doer.

This contention is predicated largely upon the fact that the appellees never in any formal sense tendered *to Fuchs* the return of his obligation. It is doubtless a sufficient answer to this contention to say that they did tender the Fuchs obligations *to the appellant*. As will be seen presently, this was equity as to him. The appellees received these obligations, not from Fuchs, but from the appel-

lant, through his agent, Hilstrom. They had a right to return them over the same course. It was not inequitable to the appellant that they should do so. He would be enabled thereby to protect his rights as between him and Fuchs; whereas, if the appellees had surrendered and delivered them directly to Fuchs, it might work to the disadvantage of the appellant in his contractual relation with Fuchs. Fuchs took his conveyance of the farm from the appellant subject to these incumbrances. He was, therefore, bound by the terms of such incumbrances. They represented a part of the purported consideration which Fuchs undertook to pay. This manner of conveyance created rights in favor of the appellant, as against Fuchs, the protection of which might require that the obligations of Fuchs delivered by him to the appellees should be returned by the appellees to him, rather than to Fuchs, in the event of repudiation or rescission.

It further appears that Fuchs is a resident of Minnesota, and personal jurisdiction could not be had over him in this state. Original notices were personally served upon him in Minnesota by both appellees. Thereafter, he was defaulted for want of appearance. After such default, an identical amendment was filed by both appellees, whereby they purported to bring into court the Fuchs obligations and to tender them there to whoever was entitled to them. The contention of appellant is that such amendments were ineffective as to Fuchs, because no notice was served upon him, as required by statute, and that, therefore, the appellees must stand upon their original pleadings. Let this proposition be conceded; yet we see in it little avail for the appellant. The original petition and cross-petition and the original notice thereof served upon Fuchs were quite sufficient to give the court full jurisdiction *in rem* over the property and over all issues tendered in petition and cross-petition. The alleged fraud and the disaffirmance because thereof were averred in such petitions, and the re-establishment of the surrendered obligations of Thelander was prayed for as equitable relief. General equitable relief was also prayed. We see nothing wanting in the scope of the jurisdiction conferred upon the trial court. The later amendment was nòt essential to the jurisdiction of the court to enter the very relief provided by the decree. Fuchs is not here complaining of error in the

decree. He tendered no issue in the trial court, either of law or fact. He raised no question of the sufficiency of the pleading. Granted, therefore, that appellant might challenge the decree against Fuchs for want of jurisdiction, he cannot challenge the same for mere error as against Fuchs. So far as errors in the decree are concerned, he may challenge only such as are prejudicial to him. The decree purports to adjudicate nothing as between Thelander and Fuchs. Their rights as between themselves are unlitigated. If it be thought that the appellant would have been entitled to a complete adjudication, as between the three parties to an alleged tripartite novation, yet, to accomplish such adjudication, it would have been incumbent upon him to raise such question in the trial court and to tender appropriate issues to that end and to require proper parties to be made. Nothing of that kind was done, and the point is not available to him on appeal, as a mere abstract proposition. The one issue made by the pleadings and tried by the court was one between appellees and appellant alone. As between appellees and appellant, the substance of their controversy relates not to the substituted mortgages, but to the substituted *notes*. The appellees have at all times since March 1, 1920, had their respective mortgage liens to secure their purchase-money claims. Their position was not substantially affected by the acceptance of a mortgage from Fuchs as the then owner of the land, in lieu of new mortgages from Thelander, who had parted with the title. What vitally affected the interest of the appellees was the surrender of their *notes,* which fixed the personal liability of Thelander. The fact that they released their mortgage of record, for the purpose of enabling a first-mortgage loan to be made, did not discharge their mortgage lien, as between them and Thelander. Its release was effective, according to its intent, in favor only of third parties. It continued unabated as between the parties to the instrument, and it matters little whether we call it an equitable lien or a mortgage lien. The petition and cross-petition characterized it in both aspects, and asked foreclosure thereof.

III. One of the contentions of appellant is that, because the petition asked a foreclosure of the "mortgages," such designation included the Fuchs mortgage, and, therefore, the prayer

for its foreclosure amounted to an affirmance of
the transaction and a waiver of the fraud. As
against this, appellee plaintiff contends that the
use of such plural word "mortgages" was a mere clerical slip,
and that this was manifest from the context. The same plural
word is used in the cross-petition; but the cross-petitioner had
two mortgages, and therefore necessarily used the plural to
describe them. We see little merit in the point thus made, upon
any view of the pleadings. The petition did not ask judgment
on the Fuchs *note*, nor did it claim any relief by virtue thereof.
It did ask judgment on the original Thelander note. If the
plaintiff was entitled to that, he was also entitled to a foreclos-
ure of one mortgage or the other, as the security for such note.
The mortgage made by Thelander and the mortgage made by
Fuchs were identical in terms, except as to the person executing
the same, and both covered the same property, and both were
intended to secure the same debt. Fuchs, as mortgagor, had no
right in the mortgaged land that could rise above the lien of
that debt. What difference could it make, in equity, which of
such mortgages should be deemed foreclosed for the purpose of
enforcing collection of that debt? Suppose the decree had de-
clared a foreclosure of both of them,—who could suffer preju-
dice therefrom, in the absence of personal judgment? So far
as the mere mortgage executed by Fuchs was concerned, he was
under no greater burden thereby than he was under the deed
by which he held his title. By his deed, he took his title sub-
ject to the lien of this debt. By the mortgage, as distinguished
from any promise to pay, he was subject to no more than he had
been under his deed. His execution of the *note*, however, cre-
ated a different situation. He did thereby assume a personal
liability which he had not assumed before. This was the one
and only substantive thing received by the plaintiff as a con-
sideration of his surrender of the Thelander note. The original
petition of plaintiff was consistent in its repudiation of this
note as a purported benefit received. It predicated no claim
thereon, nor did it ask to establish any personal liability as
against Fuchs upon any ground whatever. This fully answers
the contention of appellant that the plaintiff had by its pleading
affirmed or ratified the transaction.

2. FRAUD: non-
  affirmance of
  fraud.

To put it briefly, the Fuchs mortgage, if in the hands of Thelander, or otherwise put in circulation, would operate as a cloud upon the equitable liens of plaintiff and cross-petitioner. If they were entitled to rescind on the ground of fraud, they were entitled either to a cancellation of the Fuchs mortgages or else to a foreclosure thereof, as the security for the debt owed to them by Thelander, they being the mortgagees named therein. The cancellation of the mortgages could be justified on the ground that, if put in circulation, they would operate as a cloud upon the unrecorded liens of plaintiff and cross-petitioner. The foreclosure of them might be justified in equity, on the ground that the mortgagees were entitled to just such a mortgage, either from Fuchs or from Thelander, to evidence the unrecorded liens which they indisputably had. The substitution of the mortgages in lieu of those executed by Thelander did not necessarily operate as a fraud upon the mortgagees; whereas, the substitution of the notes executed by Fuchs in lieu of the Thelander notes did operate as such fraud. We deem it plain, therefore, and so hold, that the tender of the Fuchs *notes* to Thelander was a quite sufficient tender to entitle the plaintiff and cross-petitioner to the relief awarded to them.

It may be added that there is nothing in the decree which would preclude Thelander hereafter from enforcing in equity, as against Fuchs, all the terms of the mortgage, subject only to the prior rights of the appellees.

The foregoing presents the principal points relied on by the appellant. We see no ground for disturbing the decree entered by the trial court. Our foregoing conclusion renders it unnecessary that we consider appellees' motion to dismiss the appeal, which was submitted with the case. The decree of the trial court is affirmed.—*Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.