## ADAMS v. ADAMS.

1. **Mortgage**: UNDUE INFLUENCE IN OBTAINING:. EVIDENCE NOT ESTAB-
LISHING. It was sought in this action to cancel a note and mortgage
given by plaintiff to defendant, her brother, in the settlement of their
father's estate, on the ground that the brother was called in as confiden-
tial adviser, and that he obtained the secureties by undue influence; but
*held* that the evidence (see opinion) failed to establish the claim set up
by plaintiff.

2. ———: CONSIDERATION: SETTLEMENT OF ESTATE AMONG CONTENDING
HEIRS. The compromise, among members of the same family, of dis-
puted claims to family property, has always been regarded by the courts
as constituting a valid consideration for the contracts entered into in
effecting the settlement. (See opinion for authorities.) Accordingly,
where there was a controversy between plaintiff and her sister as to
the distribution of their father's estate, and defendant, (a brother
of the contending parties,) who had no legal claim to any portion of it,
was called in as an adviser, and plaintiff's sister agreed to surrender a
portion of what she, with good reason, considered herself entitled to,
provided the brother was allowed to participate equally with them, and
plaintiff consented to this method of settlement, and executed the note
and mortgage in suit in pursuance thereof, *held* that the compromise con-
stituted a good and valid consideration for the note and mortgage.

3. ———: DELIVERY BY NOTARY: AUTHORITY PRESUMED. Where plaint-
iff executed a note and mortgage with the intention that they should
be delivered to the defendant, and left them in the hands of the notary
who took her acknowledgment, with no special directions for their deliv-
ery, and he delivered them to the defendant, who was the payee and
mortgagee, *held* that the authority of the notary to so deliver them
would be presumed, and that the delivery was valid.

### Appeal from Adams District Court.

### FRIDAY, DECEMBER 10.

ACTION in equity for the cancellation of a promissory note,
and a mortgage on real estate given as security for the same.
The district court entered a judgment in accordance with the
prayer of the petition. Defendant appeals.

*Davis & Wells*, for appellant.

*Towner & Lucas*, for appellee.

REED, J.—The plaintiff and defendant are children of
Ebenezer Adams, who died in January, 1884, at the age of

ninety-four years. He left surviving him the parties to this
action and five other children. For the last six months of
his life he lived with plaintiff and Mrs. Chloe Weedon,
another daughter. Previous to that, for about eight years,
he had lived with another daughter, Sarah Hutchison.
Some years before his death he executed a will, by which he
devised all the property of which he should be seized at the
time of his death to plaintiff, Mrs. Weedon and Mrs. Hutch-
ison, in equal shares. A short time before he died he executed
to plaintiff a conveyance of the tract of land which is included
in the mortgage in question, and which was all the real estate
owned by him. No consideration was paid by plaintiff for
this conveyance. Plaintiff did not place this deed of record
until after the death of her father, and Mrs. Hutchison had
no knowledge of the execution of the deed until after it was
recorded. After the death of the father, plaintiff took pos-
session of the personal property belonging to the estate,
which was of the value of about $1,500. She also took pos-
session of said will. Soon afterwards, Mrs. Hutchison
began to inquire for the will, but plaintiff sought to impress
her with the belief that their father had destroyed it before
he died, and she sent it to defendant, who resided in the
state of Illinois, and requested him to place it in the posses-
sion of a third party, to be retained until she should call for
it. When Mrs. Hutchison learned of the existence
of the deed from her father to plaintiff, she was greatly
dissatisfied; and she made the claim that, owing to the
weakness and imbecility of the father when he signed
the deed, he was incapable of making a valid contract. She
also threatened to institute legal proceedings for the annul-
ment of the deed, and for the recovery of the will, and the
establishment of the rights conferred upon her by it.
Plaintiff thereupon requested the defendant to come to Iowa,
and endeavor to effect a settlement of the matters in dispute
between the parties. He accordingly visited them, and a
negotiation for a settlement was entered into. Mrs. Hutch-

ison at first demanded the interest in the whole property, which she would have taken under the will if it had been admitted to probate, and the conveyance of the land had not been executed. She afterwards consented, however, that the whole property might be divided equally between plaintiff, defendant, Mrs. Weedon and herself.

It does not clearly appear who first made the suggestion to permit the defendant to take a share of the property; but, as he claimed that his father had often told him that he intended to make some provision for him out of his estate, the suggestion probably came from him. The parties agreed upon that division of the property as a basis of settlement. It was further agreed that plaintiff should retain the land and a portion of the personal property. Certain notes belonging to the estate were turned over to Mrs. Hutchison in part payment of the amount coming to her under the settlement, and plaintiff gave her own promissory note for the difference between the amount of said notes and the value of her share, and she executed to plaintiff a release of her interest in the estate. The notes and mortgage in question were given to defendant in satisfaction of the amount which was coming to him under the settlement. The substance of plaintiff's complaint is that, at the time of the transactions in question, she was in a delicate state of health, and greatly troubled and annoyed by the complications which had arisen with reference to the estate; and that, having implicit confidence in defendant, who is a minister of the gospel, she appealed to him to advise and assist her in the emergency, and that he advised and induced her to consent to the settlement, and that he represented to her that it was necessary for her to sign the papers in question in order to effect a settlement and avoid litigation; and that, relying upon his representations, and having full confidence in him, she did sign them, without having any understanding of their effect, or of the obligations she was thereby assuming; and she

claims that they were obtained by fraud and undue influence, and that they were given without consideration.

I.  It would not serve any useful purpose to set out the evidence in the case.  We will content ourselves, as is our custom in cases of this class, with a statement of the ultimate facts which we think are proven. Plaintiff undoubtedly had great confidence in the judgment and integrity of defendant, and relied upon him to bring about a settlement between her and Mrs. Hutchison.  He did not, however, assume to act in the matter as her agent or attorney; that is, he did not himself make the settlement with Mrs. Hutchison, but sought rather to bring the parties together, that they might themselves arrive at an understanding.  While it may be that he first made the suggestion that he ought to be permitted to take a portion of the property, it is clear that he did not urge that claim upon either of the parties, and he certainly used no persuasion to induce plaintiff to consent to it.  She admits herself that she assented to it at once when the suggestion was made to her.  She understood the basis of the settlement, and we are fully satisfied that, when she signed the note and mortgage, she knew the character of the instruments, and the nature of the obligations she was assuming.  We are also satisfied that she executed them after full deliberation.  She was exceedingly anxious that some adjustment of the matter should be made that would prevent litigation.  In her letter to defendant, in which she asked him to come to Iowa and endeavor to effect a settlement, she told him that she dreaded a " lawsuit," and, in some of her conversations with him pending the negotiation, she expressed, not only a willingness, but a desire, that he should share in the inheritance; so that she obtained by the settlement some of the principal objects she had in view when the negotiation was entered into.  It is very clear, we think, that the contract cannot be avoided on the ground that it was obtained by fraud or undue influence.

*1. MORTGAGE: undue influence in obtaining: evidence not establishing.*

Adams v. Adams.

II. Is the contract supported by a valid consideration? It is clear that it is not supported by any pecuniary consideration moving between plaintiff and defendant. It is conceded by all of the parties that the will of Ebenezer Adams is valid, and there was no obstacle to its being admitted to probate. When probated, the whole of the estate would have vested, under its provisions, in plaintiff, Mrs. Hutchison and Mrs. Weedon Defendant, then, had no interest in the property. Nor was he asserting any. He claimed, it is true, that his father had promised to make some provision for him out of the estate; but, as he had died without altering the provisions of his will, he knew perfectly well that he had no valid claim to any portion of the property. If the question depended solely on the relations which plaintiff and defendant bore to each other and to the estate, it is very clear that there would be an entire absence of any valid consideration to support plaintiff's promise. But the settlement in which the note and mortgage were given, it must be borne in mind, was not a settlement of any matter in controversy between plaintiff and defendant; but it was made for the purpose of compromising the matters in dispute between plaintiff and Mrs. Hutchison. The claim of the latter was that she was entitled to one-third of all the property, including the land; and the object of the parties in entering into the negotiation was to settle that claim, and prevent the institution of legal proceedings for its establishment and enforcement. By the settlement, Mrs. Hutchison relinquished a portion of her claim, and consented that the residue of the amount claimed over and above the amount she consented to accept might be transferred to defendant, and the amounts which plaintiff and Mrs. Weedon would have taken if Mrs. Hutchison's claim had been established were diminished in the same proportion, and the amounts were transferred to defendant.

If the compromise was fairly entered into, equity will sustain it, on the ground that it was a family arrangement, made

Vol. LXX.—17

for the purpose of preventing unseemly strife and litigation between kindred, and of preserving harmony and affection among them. The evidence shows beyond doubt, we think, that the claim urged by Mrs. Hutchison, that her father was incapable of making a valid contract when he signed the deed to plaintiff, was made in good faith. There is much evidence in the record which tends to establish that claim. But we are not required to determine whether it was true or not. It was urged in good faith, and it a was serious question whether it could not be established. Plaintiff recognized this, and was exceedingly anxious to avoid an investigation of the question in the courts, and she consented to the settlement for the purpose of preventing litigation. The compromise, among the members of the same family, of disputed claims with reference to family property, has always been regarded by the courts as constituting a valid consideration for the contracts entered into effecting the settlement. *Stapilton v. Stapilton*, 1 Atk., 2; *Westby v. Westby*, 2 Drury & War., 503; *Zane v. Zane*, 6 Munf., 406; *Paris v. Dexter*, 15 Vt., 379; *Steele v. White*, 2 Paige Ch., 478; *Cruger v. Douglas*, 4 Edw. Ch., 433.

III. It is urged that the note and mortgage were never delivered, but that defendant obtained possession of them wrongfully. But this claim is not sustained by the proof. Plaintiff executed the instruments, as we have seen, as part of the settlement, and with the intention that they should be delivered to defendant. She did not personally deliver them to him; but she left them in the hands of the notary, who took her acknowledgment of the mortgage, and he subsequently delivered them to defendant. She gave the notary no special directions as to what should be done with them. As they were executed for the purpose of being delivered to defendant, and nothing remained to be done for the completion of the settlement except to deliver them, the authority of the notary to make the delivery will be presumed.

3. ——: delivery by notary: authority presumed.

The judgment of the district court will be reversed, and the cause will be remanded, with directions to the district court to enter a judgment dismissing plaintiff's petition; or, at defendant's election, such judgment will be entered in this court.

REVERSED.