ANNA L. WILSON v. WYOMING CATTLE & INVESTMENT Co., ET AL., Appellant.

**Exchange of bank stock:** RESCISSION OF CONTRACT: MISTAKE: EVIDENCE. Relief from a contract on the ground of mistake will not be granted unless the mistake was mutual. Evidence reviewed and held sufficient to support a finding that one of the parties to a contract for an exchange of corporate stock did not share in the claimed mistake as to its value.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

THURSDAY, NOVEMBER 16, 1905.

ACTION to compel defendants to enter the transfer to plaintiff of certain certificates of stock in the Wyoming

Cattle & Investment Company on the books of the company and to pay to her certain dividends. Decree was entered as prayed, from which defendants appeal.— *Affirmed.*

*Read & Read,* for appellants.

*Ryan, Ryan & Ryan,* for appellee.

LADD, J.— Prior to October 11, 1900, the plaintiff was owner of a house and lot in Des Moines estimated to be worth from $1,000 to $1,600. At the same time Mrs. Chapin was possessed of 10 shares of stock of the par value of $100 each in the Grand Avenue Savings Bank, of which defendant D. H. Kooker was president. The latter had recently participated in the organization of the Wyoming Cattle & Investment Company, in which he had acquired stock as compensation for land conveyed to it by him. The shares were of the par value of $200 each. Mrs. Chapin's bank stock was for sale. The plaintiff was tired of her property. Both had been listed for some time with a real estate broker, J. W. McClure. He ascertained that Kooker was anxious to get the stock off the market, and, by taking advantage of the situation, arranged a deal whereby, on the day mentioned, Mrs. Chapin transferred her stock to the plaintiff for the house and lot, paying as the difference $600, and the latter exchanged the said stock to Kooker for stock in the Wyoming Cattle & Investment Company.

By mistake, as defendants contend, Kooker assigned ten shares in the cattle company, instead of five, and did not discover the mistake until nearly two years later, when plaintiff called at the bank to inquire concerning the prospect of dividends. He then asserted that a mistake had been made, and that she was entitled to but five shares of the stock. As the officers of the company declined to enter the transfer of more than five shares on its books, and refused to pay to plaintiff the dividends declared in 1903 and 1904 of 10 per

cent. each, this action was brought to compel such transfer and payment. In his cross-petition Kooker prayed that the assignment of one of the certificates of five shares be decreed to have been by mistake, and that the same be restored to him.

The record has convinced us that Kooker, in assigning the stock in the cattle company, overlooked the fact that the shares were of the par value of $200, instead of $100 each. This appears from his testimony and the circumstances that, while the bank stock was actually worth but 60 or 70 cents on the dollar, the cattle company stock was selling at par. This alone, however, is not enough to justify the relief prayed by him. It must also appear that the mistake was shared by plaintiff, or that she upon receiving the stock knew of Kooker's mistake. The business in plaintiff's behalf was transacted by her husband. A few days previous to October 19th he ascertained from McClure that Mrs. Chapin would exchange her bank stock for his wife's property, and on that day called upon Kooker to learn its value. Though he then obtained no information, he understood from his wife that it had no market value. Later he ascertained from McClure that an arrangement might be made with Kooker to issue stock in the Wyoming Cattle & Investment Company in exchange for the bank stock. This, according to Wilson, was his first knowledge of the existence of that company, and in the forenoon of the next day he called on Kooker, with McClure, and inquired whether he was ready to make such an exchange, to which Kooker responded that, as he was tired of having the bank stock hawked for sale over town, he would.

Whether his proposition was to exchange "share for share" or $1,000 of the company stock for a like amount of bank stock depends on whose testimony shall be accepted, that of Wilson and McClure or of Kooker. As the witnesses were before the district court, we are not inclined to disturb the finding that it was "share for share." At that time neither Wilson nor McClure knew what the par value of the cattle

company stock was, although McClure says that he supposed it to be the same as the bank stock. Nevertheless, McClure, immediately upon the return to his office, drove out to Mrs. Chapin's house and procured a blank assignment of the bank stock, and upon his return the plaintiff and her husband executed a conveyance of the house and lot. All three agree that the plaintiff hesitated about signing the deed. McClure testified that he assured her that it would be a good trade, as she was getting the cattle company stock, share for share, for the bank stock, but did not recall that anything was said concerning the former being of the par value of $200. The plaintiff testified that she declared, when about to sign the deed, that she wanted to back out and obtain cash for her property, when she was advised by her husband and McClure that the stock was $200 a share, and that they believed she would get the money out of it, and that she would not have exchanged had she not understood that the par value of the cattle company's stock was $200, and that she was to receive 10 shares. True, her testimony is weakened by the statement that her husband had informed her a day or two before of the face value of the shares, but it is corroborated by McClure's confirmation that she hesitated, and her husband's testimony that he and McClure advised as above stated.

It does not appear that Wilson knew the par value of the cattle company's stock prior to the conversation on the forenoon of October 11th. That McClure supposed it to be $100 per share does not even tend to establish the understanding then had by Wilson. He testified that after that conversation he made inquiries of those interested in the company, and especially of the late B. F. Elbert, who informed him that the par value of the stock was $200, and expressed the opinion that, with good management, it would be worth its face value and would pay. Possibly this last might have been said of the bank stock. While he had previously stated that he would make the exchange, his principal was not legally bound to do so, as the understanding had not been

reduced to writing, and it is all but inconceivable that he should have consummated the deal without ascertaining the face value of the stock and something of its value. That he did so must have been found by the district court, and as against his uncontradicted statement we are not prepared to say he did not, nor to reject his testimony that, but for the information so acquired, he would not have advised his wife to make the exchange.

Something is said of the long delay in demanding the transfer on the books of the company. According to Wilson, this was to have been attended to by Kooker; while the latter says McClure was to see to it. Either account sufficiently explains the delay. Immediately after the noon hour the assignment of the stock was made. All the talk, according to the preponderance of the evidence, had been of an exchange of " share for share," and nothing had been said of the par value of the stock in the company. In these circumstances it cannot be said that plaintiff was charged with knowledge of or shared Kooker's mistake. This was the finding of the district court, and, in view of the superior advantages it had in weighing the testimony as given orally by the witnesses, we are not inclined to interfere with its conclusion.—*Affirmed.*