CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Appellant, v. EDWARD ENDORF et al., Appellees.

No. 43135.

1302

NOVEMBER 12, 1935.

REHEARING DENIED MARCH 20, 1936.

Hugh H. Shepard and T. A. Kingland, for appellant.

Miller & Claussen and E. C. Halbach, for appellees.

ANDERSON, J.—This is an action in equity brought by the plaintiff-appellant, the Connecticut Mutual Life Insurance Company, against the Endorfs, mortgagors, and Jay Williams, appellee, who holds a judgment against the Endorfs for approximately $900. The mortgage which is involved was dated January 6, 1928, securing a $5,000 note. No payments had been made upon the mortgage, other than some interest, and at the time this action was commenced there was approximately $6,000 due thereon, including delinquent taxes. There was also a second mortgage covering the real estate involved for $4,000, dated July 1, 1931. The defendant Williams procured a judgment in the district court of Clinton county, Iowa, on the 9th day of September, 1931, against title holders, Endorf. It will thus be noticed that Williams' judgment was junior to the lien of both the first and second mortgage. Sometime in December, 1933, some negotiations took place between the appellant mortgage holder and the makers thereof, the defendants Endorf having for its purpose the conveyance of the mortgaged premises to the appellant in satisfaction of its mortgage. The plaintiff claims

that such negotiations resulted in an oral agreement on or about the 15th day of December, 1933, under the terms of which the defendants Endorf were to execute a conveyance of the mortgaged property to appellant and the appellant was to satisfy its mortgage and return the same to the makers thereof, the Endorfs. The plaintiff claims that under said oral agreement the property in question was to be conveyed free and clear of all incumbrances except the lien of the first mortgage and delinquent taxes. On or about December 15, 1933, the conveyance in question was executed by the defendants Endorf, and at the same time what is known in the record as an estoppel agreement, both being prepared by the appellant and executed by the title holders, Endorf. The deed recited that the property was free and clear of all liens and incumbrances except appellant's mortgage and delinquent taxes. The so-called estoppel agreement also contained statements to the effect that the conveyance was executed voluntarily; that the mortgage indebtedness represented the fair value of the property; that no other person was interested directly or indirectly in the premises; and that there were no other liens existing upon the property. The estoppel agreement also contained a further statement that it was not the intention of either of the parties that the title to the real estate should merge to the prejudice of the mortgagee's rights as against junior lienholders. At the time this conveyance and estoppel affidavit were prepared and executed, the second mortgage of $4,000 and the judgment lien of the defendant Williams were still unsatisfied and both were shown upon an abstract of the title which was furnished the appellant. Later a release of the $4,000 second mortgage was secured by the payment to the holder thereof of the sum of $10. After the execution of the deed to the appellant of the mortgaged premises and the execution of the so-called estoppel affidavit, and after they had both been delivered, together with the abstract of title to the appellant, the appellant attempted to obtain from the defendant Jay Williams a release of his judgment. The testimony shows that such was attempted several times, the last time being January 17, 1934, and that Williams refused to release his judgment. On February 10, 1934, the appellant caused the deed to be made of record and also a release of its mortgage. In October, 1934, the appellant brought this action in the district court of Clinton county, Iowa, asking that the release of its said mortgage be canceled, its mort-

gage reinstated and established as a first lien against the mortgaged property, and that said mortgage be foreclosed and that it have judgment for the amount shown to be due thereon. The appellant basing its right to such relief upon the allegation that the acceptance of the deed and the release of appellant's mortgage was all done under the mutual belief and mistake of law and fact on the part of both plaintiff and the said defendants Endorf that the lien of the judgment of the defendant Jay Williams had been fully discharged by the discharge from all provable debts through a discharge in bankruptcy; and that it would not have accepted the said deed and released the said mortgage had it known that the discharge in bankruptcy of Endorf did not release the lien of the Williams judgment. There was an answer in the nature of a general denial filed by the appellee Williams. Upon submission of the issues thus joined to the court, the court found for the defendant Williams and dismissed the petition of the plaintiff insurance company. The insurance company appeals.

The appellant claims that the mistake was one of both law and fact, and that it was mutual, and that under such circumstances equity will grant relief. There is no question but what in a proper fact situation equity can and will relieve against the consequences of the release of a mortgage and permit suit to be brought thereon, and it will be unnecessary to discuss that part of appellant's argument dealing with this proposition.

The first serious question that presents itself is whether the record sustains the allegations of fact upon which appellant seeks relief. In this case appellant pleads the making of an oral contract under which it was agreed that the mortgaged premises should be conveyed to it free of all incumbrances, except its mortgage, and that plaintiff should discharge its note and mortgage and pay $10 to obtain a release of the second mortgage. It is further alleged by appellant that in such oral contract the Endorfs represented that there were no liens on the premises other than the first and second mortgages, and that the Williams judgment had been discharged in bankruptcy. There is no allegation of fraud or misrepresentation. The mutual mistake upon which appellant bases its claim for relief is bottomed upon the alleged oral contract, and we will first inquire as to the proof which plaintiff claims sustains its allegation of a mutual mistake. The negotiations leading up to the making of the alleged

oral contract were conducted by one Henderson, who was acting in some capacity as agent for the appellant company. He, Henderson, testifies that he was asked by the company to obtain the deed and estoppel affidavit and the release of the second mortgage. He testifies that he had called upon the Endorfs several times during a two-year period, but did not talk with them in detail as to the matter of obtaining the conveyance from them and the release of the second mortgage. The conveyance and the estoppel agreement were not even presented to the Endorfs by Henderson, the agent. He mailed them to a banker friend of his, a Mr. Rutenbeck of Lowden, who knew the Endorfs, and who told Henderson he would have no difficulty in getting a deed. Rutenbeck obtained the signatures of the Endorfs to the two instruments. Henderson further testifies that he did not remember whether he personally had negotiations or interviews with Mr. Endorf as to the details leading up to the execution of the deed and estoppel agreement. Rutenbeck, who obtained the signatures of the defendants Endorfs, was not a witness upon the trial, and he is the only one other than the Endorfs who could have testified as to the negotiations or details, ·if there were any, looking to the execution of the deed and the release of the mortgage. Endorf testified that when he gave this deed on December 15, 1933, he did not know what liens were on the place. "I didn't guarantee to these people there weren't any but they took it that way. I and Mrs. Endorf didn't guarantee it. I took their statement for what the liens were. I didn't tell those people what the liens were on the place. I didn't know whether this judgment was a lien on the land or not. I never knew. I don't know. that now. I have never told anybody that it wasn't a lien." And Mrs. Endorf testified, "We didn't make any guarantee to Mr. Henderson of any kind as to how the title of our land stood. I didn't know as a matter of fact, when I signed that whether the land was free of liens or not. We didn't tell him what to put in the deed or the affidavit." Mr. Endorf further testified that no one said anything about the Jay Williams judgment. "There was nothing said about whether it was a lien or not." This is practically all of the testimony bearing upon the question as to the details of the transaction and as to whether or not there was such an oral agreement in reference to the liens as is alleged by the appellant. It must · be concluded that plaintiff-appellant failed to establish the mak-

1306

ing of the oral agreement alleged in its petition and upon which it seeks the relief therein prayed. Henderson, the agent of appellant, as well as a Mr. Hart, another agent of the company through whom Mr. Henderson worked knew that the covenant of the deed and the statement in the affidavit, as to the non-existence of liens, was not true at the time such instruments were executed. And after the instruments were executed and before they were recorded and before the release of appellant's mortgage, it negotiated both with the holder of the second mortgage and with Williams to secure the release of their liens. It cannot be said that the appellant was deceived by any representations as to the title to the land or as to the existence of liens thereon. The appellant had the abstract of title showing the lien of the Williams judgment. There is not one word in the record showing that the Endorfs or anyone else represented that the lien of the Williams judgment had been discharged by the adjudication in bankruptcy. Appellant has wholly failed to establish the pleaded facts in reference to the alleged oral agreement and in relation especially to the Williams judgment. Both of the agents of the appellant, as well as its home office, knew of the existence of the judgment. After the home office had received the conveyance and the estoppel affidavit and the abstract, it wrote a letter to its agent returning the papers stating that the release of the second mortgage was unsatisfactory and that the judgment lien (Williams') shown at 92 of the abstract was discharged by Endorfs' bankruptcy. This was simply and purely a mistake as to law and cannot be contorted into a mistake as to any fact. Williams cannot be blamed for any negligence on the part of the appellant. Before the mortgage in question was released, on more than one occasion, he told the representatives of the appellant that he would not release his lien. The appellants at all times knew prior to the filing of their deed and the release of their mortgage that Williams was standing on his lien and declined to release it.

The cases cited and relied upon by appellant do not sustain its position. In the first case, Bruse v. Nelson, 35 Iowa 157, the mistake consists in ignorance of a most material fact, that is, that an intermediate mortgage had been made to secure the sum of $800. A prior mortgage was released, the mortgagee not knowing of the existence of an intervening mortgage. There was a

clear question of mistake and ignorance of a material fact, and the court permitted the reinstatement of the mortgage.

In the cases of Baker v. Massey, 50 Iowa 399, and Bottorff v. Lewis, 121 Iowa 27, 95 N. W. 262, we find in both an entirely different state of facts than in the case at bar. In those cases both parties were laboring under the same mistake and both cases involved the question of law and fact, as to whether an individual is the owner of property; and the court used this language in both cases, "It is questionable whether this mistake was one purely of law. It has this element of fact in it." And the court further say, "If an agreement be entered into between two parties, in mutual mistake on mixed fact-law questions they do not aid appellant in the actual condition of the record."

The case of Cherry v. Welsher, 195 Iowa 640, 192 N. W. 149, 152, is not similar to the case at bar in its facts. In that case action was brought against three parties (Elliots) who had assumed and agreed to pay a mortgage held by a Mrs. Cherry. The Elliots had sold the land to Welsher and took a mortgage back for $5,000. Mrs. Cherry, who was an inexperienced woman, released her first mortgage and took a new note and mortgage for the same amount. Action was later brought by Mrs. Cherry in which the mortgage of Mrs. Cherry was held to be junior to a prior mortgage held by the Elliots, but she was permitted to recover from the Elliots because they had assumed and agreed to pay her mortgage which she had ignorantly released. The only question in that case was as to whether the release of the first mortgage by Mrs. Cherry was a discharge of the obligation of the Elliots to pay the same under their assumption and agreement to pay the same. And the court permitted her to recover. In the Cherry case it appears that the Elliots set out to swindle Mrs. Cherry and the court say in its opinion, "There is a motive in this case that is not difficult to understand. As one reads the record he unconsciously breathes the atmosphere of strategy."

There is no air of strategy in the case now before us. There is no inference of fraud or misrepresentation. There is absolutely no evidence tending to show a mutual mistake of fact or law. The most that can be said is that it was fully and simply a mistake of law. In the instant case the undisputed record shows that the appellant solicited the deed, knew all the facts concerning the title, and knew that Williams was asserting the lien of

his judgment prior to the time that it accepted the deed and released its mortgage.

In the case of Gjerde v. Thelander, 197 Iowa 1384, 199 N. W. 401, only a question of fraud is involved, and none of the questions here under consideration are even mentioned in that case.

In the case of Moore v. Crawford, 210 Iowa 632, 231 N. W. 363, the mortgage involved was released by a court appointed commissioner contrary to the order of the court. No question of mistake or fraud was involved. The mortgage was reinstated.

After considerable independent research, we find no instance where a court has given relief against a pure mistake of law, unmingled with any mistake of fact. Neither have we been able to find a case where relief has been granted on the question of mistake on the part of one party, unless fraud intervened and furnished the real basis for relief.

The real fact situation as revealed in this case is that the appellant and its agents were under a mistaken apprehension on a pure question of law. They, without doubt, thought that the discharge in bankruptcy released the lien of the Williams judgment on the land in question. There is no fact question involved. It is purely a situation of ignorance of the law and all through the decisions of this court we have refused to grant relief against a pure mistake of law.

In Pierson v. Armstrong, 1 Iowa 282, 63 Am. Dec. 440, this court had this question under consideration and in disposing of it used the following language:

"The maxim *'ignorantia legis non excusat,'* is stated throughout the books, as an elementary proposition; and when you look for the doctrine of law on this subject, you find it to be, that equity will not relieve against a mistake of law."

In Hunt v. Rhodes, 1 Pet. 1, 15, 7 L. Ed. 27, the Supreme Court of the United States said:

"The question, then, is, ought the court to grant the relief which is asked for, upon the ground of mistake arising from any ignorance of law? We hold the general rule to be, that a mistake of this character is not a ground for reforming a deed founded on such mistake."

In the Pierson case, supra, the court held that a mistake as

to the purport of the language in the deed was a mistake of law and the plaintiffs were not entitled to recover.

To the same effect is the holding of this court in Corning v. Grohe, 65 Iowa 328, 21 N. W. 662, 664, and in disposing of the question this court said:

"The next question is whether plaintiff is entitled to have the writing reformed. We are clear that he is not. The stipulation was not made under any mistake of fact. All that can be claimed is that plaintiff did not understand the legal effect of the instrument. But this was a mistake of law, and it affords no ground for the reformation of the writing."

In Kitchen v. Chantland, 130 Iowa 618, 105 N. W. 367, 369, 8 Ann. Cas. 81, the question of mistake arose in connection with a dispute over a junior lien and in the opinion the court say:

"But appellee says that the agreement was made through mistake of fact or law, or both, and is not, therefore, binding upon him. This claim is based upon the proposition that he was mistaken as to the true boundary line. If so, it was not because of any misrepresentation or concealment on the part of the plaintiff, or because of any misunderstanding of the facts with reference to the true line. The true line is, as we think, where the plaintiff contends it to be. Defendant was not mistaken as to any of the facts tending to show acquiescence on the part of the plaintiff or her grantors in the division line as made by the old fence, for *he knew all the facts with reference thereto.* [Italics are ours.] His mistake, if there was one, was with reference to the effect of the division fence upon the true line. * * * But if, as we believe, he was mistaken as to the law when he agreed to recognize and be bound by a line to be run by the surveyor, a court of equity will not, under the circumstances disclosed by this record, relieve him. * * * Mere mistake of law as to the effect of a given state of facts is not, as a general rule, sufficient basis for relief either in law or in equity."

In the case at bar *the facts* in relation to the lien of the Williams judgment had been fully investigated by the appellant and were fully known to it; and the mistake on the part of the company was as to the legal consequences of the known facts. Applying the rule announced in the preceding cited cases to the

1310

facts of record in this case, the plaintiff cannot be permitted to prevail. The mistake of law was as to the appellant only. The defendants' testimony shows that they did not know and therefore made no representations as to the validity of the lien of the Williams judgment. There was no mutuality even in the mistake of law. The mistake must be held to have been one purely of law unmixed with any fact question or consideration. It was not induced by fraud or misrepresentation. Williams had nothing to do with it. In fact he was at all times asserting the lien of his judgment and repeatedly refused to release it.

We are of the opinion that the plaintiff has wholly failed to establish a fact situation in which equity can intervene and relieve it from its mistake or ignorance as to the pure question of law.

We are constrained to hold therefore that the trial court did not err in its finding and order dismissing plaintiff's petition.— Affirmed.

KINTZINGER, C. J., and MITCHELL, PARSONS, DONEGAN, RICHARDS, ALBERT, and HAMILTON, JJ., concur.