A. L. BAKKE, appellee, v. LOLETA BAKKE, individually and as executrix, appellant.

No. 47839.

(Reported in 47 N.W.2d 813)

MAY 8, 1951.

Holliday & Myers, of Des Moines, for appellant.

Clough & Clough, of Mason City, and Nels W. Brandstad, of Forest City, for appellee.

HAYS, J.—Plaintiff seeks to cancel and rescind a certain agreement between plaintiff and defendant, under which objections to the probate of the purported will of Annette Bakke were withdrawn and probate granted. The grounds for such cancellation are: (1) mutual mistake of fact and (2) fraud on the part of defendant. The trial court granted the relief, as prayed, and defendant appeals.

Plaintiff and defendant are brother and sister and the only children of Martin and Annette Bakke, both deceased. Martin Bakke died testate in 1922 and his will was admitted to probate

in Winnebago County, December 26, 1922. It provided in part as follows: "I hereby give, devise, and bequeath to my beloved wife, Annette Bakke, all my estate * * * at my decease to be by her used and enjoyed during her natural life, as long as she shall remain a widow. Should my wife again marry, I direct that the property be then divided among my heirs according to law." Annette Bakke qualified as executrix and administered the estate.

The assets of the estate included a home, money in the bank, and some notes and mortgages. Two notes, face value $19,000, were secured by a mortgage upon a tract of land herein referred to as the sixty-acre tract. In 1923, under approval of the court, these notes and mortgages were canceled in exchange for a warranty deed to the premises, Annette Bakke being named as the grantee. In November 1924, the final report of Annette Bakke, executrix, was approved and the estate closed. The report stated in part as follows: "And this executrix says that this estate has been fully and finally administered and that she has, under the terms of the will, taken possession in her own right of the assets of this estate, to which she is entitled so long as she remains a widow, and that such distribution of the estate is in accordance with the terms of the will and has been approved by the other heirs, who file waivers of notice and consent to the approval of this report." Annette Bakke continued until her death in June 1947 to have sole charge of and benefit from the assets of the estate, including the sixty acres. She never remarried.

On June 2, 1947, Loleta Bakke, defendant, filed for probate, in Winnebago County, a purported last will of Annette Bakke, deceased, dated August 22, 1946. By its terms the sixty acres went to A. L. Bakke, plaintiff, during his life; then to the heirs of his body and, if none, then to Loleta Bakke. She received the balance of the property. Annette Bakke had no property other than that which was obtained through the Martin Bakke will.

On July 2, 1947, A. L. Bakke filed objections to the probate of the Annette Bakke will alleging undue influence on the part of Loleta Bakke; an agreement with Annette Bakke in 1926, whereby she was to will the sixty acres to him; and also offering

for probate a will signed by her in 1944, under which he received the sixty acres and Loleta the balance of the estate.

On September 2, 1947, the agreement of settlement (the subject of this litigation) was executed by A. L. Bakke and Loleta Bakke. It provided that A. L. Bakke would pay to Loleta Bakke $2250 in exchange for a warranty deed from Loleta Bakke conveying to him all her title and interest in and to the sixty acres, specifically releasing and conveying any interest she acquired under the Annette Bakke will, dated August 22, 1946. All the rest of the property was released to Loleta Bakke, she to pay all debts, charges and claims against the estate. Conveyances and releases were executed, the money paid, objections to the will withdrawn, and the will was admitted to probate on December 3, 1947. A. L. Bakke took immediate possession of the sixty acres.

On March 10, 1948, this action was commenced to cancel the above settlement. The pleadings are voluminous, fifty-two pages of the record, and we do not attempt to set them out. Plaintiff states that he never saw the will of Martin Bakke, deceased, nor knew the terms thereof until about January 1948; that when he made the settlement he was entirely mistaken as to the true facts with respect to the estate and properties of Martin Bakke, deceased, and his will, and as to the estate and properties of Annette Bakke. He further alleged "that Loleta Bakke was also misinformed as to the true terms of the will of Martin Bakke and of the property and rights of Annette Bakke in the property received under the Martin Bakke will, and that the parties were mutually mistaken as to the facts with respect to the property and will of Martin Bakke at the time the settlement was made." Loleta Bakke, by answer, denies she was mistaken as to the facts of the will of Martin Bakke; denies that A. L. Bakke was ignorant of the terms and conditions of the Martin Bakke will; asserts negligence upon the part of A. L. Bakke, also laches and statute of limitations. Plaintiff, by amendment, pleads that Loleta Bakke, knowing of the will of Martin Bakke and its terms, perpetrated a fraud by concealing the same from him. At the trial A. L. Bakke was a witness for himself and offered the testimony of one other witness to the effect that certain improvements had been made by A. L. Bakke on the sixty-acre tract. No testimony was offered by Loleta Bakke.

The trial court stated in its findings of fact and conclusions of law that, under the pleadings, it is to be assumed that Loleta Bakke did know the contents of the Martin Bakke will, but the court was of the opinion that there was a mutual mistake, and if it was a mutual mistake of fact the agreement should be set aside; *that the court is satisfied that plaintiff did not know the contents of his father's will;* that if, as defendant alleges, there was no mutual mistake of fact, then if she knew the contents of her father's will and concealed the same from plaintiff it was a fraud upon him. In the conclusions of law the court states: "That at the time of the drawing of the agreement * * * the parties hereto were *either* mistaken as to the facts contained in the father's will *or* the defendant was guilty of fraudulent concealment of the facts from the plaintiff." (Italics added.)

Both appellant and appellee devote considerable time to the question whether the will of Martin Bakke created a fee or a life estate in Annette Bakke; as to whether Annette Bakke had title to the sixty acres by adverse possession; laches on the part of plaintiff, and the statute of limitations. While these are all very interesting questions, we do not deem it necessary to consider them in the determination of the question before us.

I. Appellant asserts that there was no mutual mistake of fact, and we are inclined to agree. The law is well-settled that for a rescission of a contract on the basis of a mistake of fact, such mistake must be mutual, barring fraud and other elements later to be considered. 19 Am. Jur., Equity, section 57; Wilson v. Wyoming Cattle & Inv. Co., 129 Iowa 16, 105 N.W. 338; Jordan v. Brady Transfer & Storage Co., 226 Iowa 137, 284 N.W. 73; Connecticut Mut. L. Ins. Co. v. Endorf, 220 Iowa 1301, 263 N.W. 284.

Appellant denied appellee's allegation in the petition that she was mistaken as to the terms of her father's will. The burden was upon him to sustain this allegation if a recovery, on this basis, is to be had. Not one word of proof was offered by appellee in the trial court, and to find that the mistake of fact, terms of father's will, was mutual is to assume as true a material allegation of the petition which is denied by the defendant and on which no testimony is offered. But even assuming such a fact, under the record we are unable to agree with the trial

court that appellee has established the fact of his ignorance of the terms of his father's will.

Appellee is sixty-three years of age, above the average in education, and holds a professorship at Iowa State College and was there at the time his father died. He attended the funeral and the next day filed with the clerk of court of Winnebago County an affidavit of his father's death. The will was filed for probate the same day; by whom filed does not appear. In 1924 he waived notice of final report and consented to the closing of the estate. That report showed that the mother took the property *in accordance with the terms of the will.* Thereafter, for more than twenty years he visited at his mother's home, knew she was in charge of all the property and paid for improvements on the farm. In 1947, when he filed objections to the probate of his mother's will, he stated that she did not remarry, which is one of the provisions of his father's will. He stated he was not enough interested to read the will and assumed his mother took everything outright. This conduct is incredible, and we think that his actions speak louder than his words and that he has not sustained the burden of showing a mistake of fact upon his part. (Italics added.)

██ II. Appellant asserts the court erred in holding her guilty of fraud. This holding is based upon the theory that appellee was ignorant of the terms of the will while appellant, attempting to administer the property, was familiar with the same; that she therefore was duty bound to reveal these facts to him. We can find no fraud in appellant's failure to disclose the terms of their father's will. Both were sui juris. The will was a public record in Winnebago County since December 1922. Both had equal access thereto. It is true Loleta Bakke had filed the will of her mother for probate and asked that she be named executrix; but at the time of the settlement it had not been probated and she was not in any fiduciary capacity which would call for any disclosures. We do not pass upon what her duty may have been had she been appointed executrix prior to September 2, 1947. At the time of the making of the settlement each party was, and for some time prior had been, represented by extremely able counsel. They prepared the instrument, all discussed it, and the two parties signed the same. We do not find fraud under

the record. 30 C. J. S., Equity, section 128; 19 Am. Jur., Equity, sections 58 and 70; Wead v. Ganzhorn, 216 Iowa 478, 249 N.W. 271; Bixler Co. v. Argyros, 206 Iowa 1081, 221 N.W. 828.

▉ Appellee asserts that both parties were mistaken as to the ownership of Martin Bakke's property under the terms of the will; that this is a mistake of ownership of property and is a mistake of fact—with this we cannot agree. Appellee knew of the contents of the will or, due to negligence, is assumed to know thereof. 30 C. J. S., Equity, section 128. Under this situation the mistake, if any, was as to the legal consequences of the known facts, clearly a legal question, and is not a basis for equitable relief. In the early case of Pierson v. Armstrong, 1 (Clarke) Iowa 282, 286, it is said: "The maxim 'ignorantia legis non excusat' is stated throughout the books as an elementary proposition; and when you look for the doctrine of law on this subject, you find it to be that equity will not relieve against a mistake of law." See also Corning v. Grohe, 65 Iowa 328, 21 N.W. 662; Kitchen v. Chantland, 130 Iowa 618, 105 N.W. 367; Connecticut Mut. L. Ins. Co. v. Endorf, 220 Iowa 1301, 263 N.W. 284.

Appellee relies upon the case of Bottorff v. Lewis, 121 Iowa 27, 95 N.W. 262, and Shalla v. Shalla, 237 Iowa 752, 23 N.W.2d 814. In the Bottorff case the court found there was a mutual mistake on mixed fact-law questions and granted relief. The Shalla case is based upon the existence of fraud. Neither case is in point with the facts under consideration here.

Finally, there is another reason why we do not think appellee is entitled to the relief asked, and granted by the trial court.

This agreement of September 2, 1947 was entered into as the result of lengthy negotiations concerning the property in question. It was voluntary and each had the benefit of able counsel. No fraud exists nor does the settlement appear under the meager record before us to be unconscionable. It appears without dispute that, at least from 1926, appellee has desired to own the sixty acres which he received by the settlement and was willing to forego any rights to the balance of the property as is shown by his offering for probate the will made in 1944.

▉ It is a well-established rule that voluntary settlement of doubts and disputes between parties is to be encouraged, espe-

cially family controversies, and will not be disturbed for any ordinary mistake either of law or of fact, since their very object is to settle disputes without judicial controversy. In the absence of fraud, misrepresentations, concealments or other misleading incidents a voluntary compromise must stand. First National Bank v. Browne, 199 Iowa 981, 203 N.W. 277; Watrous v. Watrous, 180 Iowa 884, 163 N.W. 439; Messer v. Washington Nat. Ins. Co., 233 Iowa 1372, 11 N.W.2d 727; Partello v. White, 197 Iowa 24, 196 N.W. 719; Wieland v. Cedar Rapids and Iowa City Ry. Co., 242 Iowa 583, 46 N. W.2d 916; 11 Am. Jur., Compromise and Settlement, section 32, page 279.

For the reasons above set forth the decree of the trial court is reversed and the cause remanded with directions to enter a decree dismissing plaintiff's petition at plaintiff's costs.—Reversed and remanded.

WENNERSTRUM, C. J., and SMITH, MANTZ, MULRONEY, and THOMPSON, JJ., concur.