Frank W. Bergman et al., appellees, v. William C. Bergman et ux., appellants.

No. 48774.

(Reported in 73 N.W.2d 92)

Dan J. Buckley, of Harlan, and Floersch & Floersch, of Omaha, Nebraska, for appellants.

Joe W. Turner and Richard C. Turner, both of Avoca, for appellees.

WENNERSTRUM, J.—Plaintiffs' action is one in equity wherein specific performance is sought of a contract settlement entered into by certain of the heirs of the estate of Kate Beistline Bergman, deceased. William C. Bergman, a son of the decedent, and his wife, who were parties to the contract, are defendants. It is their claim the contract was entered into under a mutual mistake of facts and was caused to be signed by them by reason of fraudulent misrepresentations of the plaintiffs. It is also claimed by the defendants the contract has been rescinded and it is also alleged the contract is unjust and unreasonable. The district court entered a decree for the specific performance of the settlement contract. The defendants have appealed.

The plaintiffs, Frank W. Bergman, Clemens S. Bergman and Nell S. Fisher and the defendant William C. Bergman are heirs-at-law and legatees under the will of Kate Beistline Bergman. The will was admitted to probate on December 30, 1952.

The contract here involved is in writing and was executed on the 16th day of December, 1952, which, as will be noted, was prior to the date of the probate of the will. It is therein stated the purpose of the contract: "* * * is the desire of the parties hereto to make provision for settlement of the estate of Kate Beistline Bergman under the terms of the will and to eliminate any dispute with reference thereto, and whereas

Frank W. Bergman is willing to buy out the interests of the other residuary legatees, and also to make settlement with Nell S. Fisher * * *."

Under the provisions of the contract plaintiff Frank W. Bergman agreed to purchase the interest of the other parties to the agreement in the estate of their mother and to pay the sum of $14,000 which was to be divided in the following manner: Clemens S. Bergman, $4000; William C. Bergman, $5000; and Nell S. Fisher, $5000. Frank W. Bergman, under the contract, also agreed to pay all the debts and expenses of the estate and certain specific legacies in the amount of $1400.

The specific legacies and all the debts of the estate except the cost of administration have been paid. It is shown the plaintiffs at the time of the trial were willing and able to perform the contract on their part. Tender and demand for performance by the defendants have been made and refused. The defendants assert their refusal is based on a notice of rescission contained in a letter written by their attorney to Frank W. Bergman on January 16, 1953.

Edgar Bergman, the father of the Bergman children heretofore mentioned, died testate in 1943. By his will he left his estate to his wife, Kate Beistline Bergman. She died November 25, 1952, and in her will she made a specific bequest of $100 to Nell S. Fisher and other bequests totaling $1400 to the children of her deceased daughters. The remainder of her estate, under her will, was bequeathed and devised to Frank W. Bergman, Clemens S. Bergman and William C. Bergman. Frank W. Bergman was named as executor of her will.

He had lived on the Bergman farm for virtually his entire life, had helped to operate it for his father until 1933, at which time the father moved off the farm. Thereafter it was farmed on a 50-50 basis until his father's death. Frank then operated the farm on a share basis, with the exception there was certain cash rent paid for a portion of the land. This arrangement was continued to the time of the death of his mother. It is also shown that he looked after his mother's business following the death of his father. The record discloses that he had a note for $7500 executed by his mother on October 29, 1952, less than

thirty days before her death. This was apparently given for prior services rendered in connection with the operation of the farm and expenditures made by him.

William Bergman lived on the farm with his parents until he entered the service during World War I. Following his return from military duty he remained on the home farm for approximately a year, was then employed by his brother Clemens, and thereafter operated a farm for himself until 1932. It appeared at that time he had considerable farm equipment and some livestock which was turned over to his father for a note which he, William Bergman, owed a bank. Subsequent to that time he has lived most of the time in Omaha, Nebraska.

Nell S. Fisher has not lived in or near the farm property for a number of years and for some reason did not visit her mother's home to any extent. It is shown by the record she has an assignment of the interest of Clemens S. Bergman in her mother's estate.

We shall not set out the property inventoried in the estate of Kate Beistline Bergman or its valuation. However, it should be stated that included in this inventory was a note of William C. Bergman which had been given to a bank in the amount of $3953.20 on which Edgar Bergman and, after his death, Kate Bergman had paid interest in the amount of $228 each year. This note was valued as a setoff in the amount of $9100.80. It is further shown that there was another note of W. C. Bergman dated October 21, 1949, in the principal sum of $1300 and on which there was a balance due of $310. It is also claimed there was a debt of Clemens Bergman which he owed his mother but the amount is not shown in the record.

It is not disputed there was a family meeting of all the parties to this controversy at the home of the deceased mother in Avoca on the evening of December 16, 1952. The apparent purpose of this conference was to make settlement of the estate between the parties. Nell, who resides in LeMars, along with her husband drove through Omaha en route to Avoca. William and his wife accompanied them on the remainder of the trip. Clemens, who lives with Nell, was also in the party. The meet-

ing resulted in an agreement which was reached late in the
evening. It was later reduced to writing that night in the
office of an attorney in Avoca. It is shown that all the parties
took part in the discussion and advised the attorney of the
agreements to be included in the contract of settlement.

It appears the main complaint of the defendants is that in
making the settlement the valuation of the farm property was
considered on too low a basis. However, the evidence as pre-
sented by them concerning this phase of the case is not of a
substantial and convincing nature. It is also maintained by the
defendants they were not adequately advised whether there was
a note of William C. Bergman for the indebtedness which it was
claimed he owed the estate and it is also contended by them they
were not advised whether the claim of Frank W. Bergman was
based on an open account or a note.

As bearing upon the nature of these claimed misrepresenta-
tions and the claimed lack of knowledge of William C. Bergman
concerning the basis of the agreement it is of interest to note his
testimony does not bear out his pleaded claims. He testified con-
cerning the meeting in the attorney's office, in part, as follows:

"Q. Now it was your understanding that what you were
doing was settling a family agreement about all of these things,
wasn't it? A. Yes. Q. And you didn't want to have a quarrel
and you didn't want to go into court on the question of whether
or not this will could be admitted to probate, did you? A. No.
Q. You didn't want to go into court on the question of what you
owed the estate, did you? A. No. Q. You didn't want to go into
court on the question of what Frank had $7500 coming for, did
you? A. No. Q. You wanted to settle all of those things, didn't
you? A. Yes. Q. And that is the reason you signed the contract?
A. Yes. Q. And there wasn't any dispute now, Bill, in my office
about this contract, was there? A. No. * * * Q. I was working
there for all of you folks and I was trying to draw a contract,
wasn't I, to settle a family argument; and you knew that. A. Yes.
Q. Or several family arguments. You knew that that was the
purpose of that right at that time, didn't you? A. Yes. Q. And
it was perfectly agreeable to you and to your wife, wasn't it?

A. Yes. * * * Q. Now you understood at that time that the effect of this thing was to make a sale of the farm and of the house to your brother, Frank, for $14,000. A. Yes. Q. And you had agreed on how the $14,000 was to be divided between you? A. Yes. Q. And that all of these problems were to be solved in consideration for this contract. That was the agreement, wasn't it? A. Yes. Q. And you were satisfied with it when you signed it. A. Well, I signed it. Q. You signed it and you were satisfied with it at that time. A. Yes. * * *."

■ I. We are convinced the defendants failed to sustain the burden of proving their allegations the settlement was induced by fraudulent representations of any of the plaintiffs or by reason of any mutual mistake of fact. We likewise are convinced the contract was not unconscionable. It is our considered conclusion the defendants had ample opportunity to ascertain the true situation and as shown by the testimony of William C. Bergman heretofore set forth.

■■ Stipulations and agreements of settlement are favored by courts where they are shown to be valid. Burnett v. Poage, 239 Iowa 31, 39, 29 N.W.2d 431. The settlement of family controversies is encouraged and will not be disturbed for any ordinary mistake either of law or fact. Bakke v. Bakke, 242 Iowa 612, 619, 47 N.W.2d 813. And in the last cited case we held, in the absence of fraud, misrepresentation or concealment a voluntary compromise should stand. We find no evidence of fraud, misrepresentation or concealment sufficient to justify setting aside the settlement entered into by the parties. Courts of equity favor the settlement of disputes among members of a family rather than by resort to law. Cole v. Cole, 292 Ill. 154, 126 N.E. 752, 38 A. L. R. 719, 726. See also Watrous v. Watrous, 180 Iowa 884, 906, 163 N.W. 439; Adams v. Adams, 70 Iowa 253, 30 N.W. 795.

■ II. Where a compromise and settlement is shown it is presumed to be fair, valid and correct and the burden of proving mistake, fraud or other facts relied on to avoid it is on the person who seeks to do so. 15 C. J. S., Compromise and Settlement, section 51c, page 777; Coffman v. Brenton, 214 Iowa 185, 196, 239 N.W. 9. The foregoing rule of law is not true where a fidu-

ciary relationship exists between the parties to the settlement and the burden is then placed on the fiduciary to rebut the presumption of undue influence and to show the settlement was made in good faith and was equitable and just. We find no fiduciary relationship existed at the time the settlement agreed on was consummated.

III. Upon the question of specific performance, as is involved in the instant case, it is stated in 11 Am. Jur., Compromise and Settlement, section 11, page 259: "In cases relating to the adjustment of family disputes where the motive is to preserve the honor or peace of the family or the family property, the courts will not closely scrutinize the consideration or look into the merits of the dispute where all is fair and aboveboard. The courts will decree performance of all reasonable settlements if possible, even though they may, at times, rest on grounds which would not have been satisfactory if the transaction had occurred between mere strangers, subject, however, to a proper regard for the principles that govern the courts in the specific enforcement of compromise agreements where this form of remedy is sought."

We deem the facts disclosed by the evidence justify the enforcement of the settlement agreement here involved. The defendants claim the evidence in this case does not merit the conclusions reached by the trial court and the decree entered by it. We are convinced the defendants have not presented sufficient and satisfactory evidence to sustain the burden placed on them to require us to set aside the settlement. We therefore affirm.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, SMITH, HAYS, THOMPSON, and LARSON, JJ., concur.

PETERSON, J., takes no part.